Plaintiff: Harris Winns (Pro Per)

Harris Winns v. BSTZ

**FILED**

ADR 2008 MAY 23 P 2: 13    Fee Paid NP

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

5

1 Harris L. Winns
2 2610 Sierra Vista ct.
  San Jose, CA. 95116
3 (408) 835-8872
4 *In Propia Persona*

5

6

7

8

9

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

10

11 | HARRIS L. WINNS

12 |    **Plaintiff,**

Case No:

**C 08    02622    PVT**

13 |    v.

14 | BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN,

15 | LLP.  (Anthony Intil, an individual; Candy

**EMPLOYMENT DISCRIMINATION COMPLAINT**

16 | Mielke, an individual; Jim Salter, an individual;

**Demand For Jury Trial**

17 | Michael Mallie, an individual; John P. Ward, an

individual; Ed Taylor, an individual; Dan

18 | Devos, an individual; Diane Robson, an

19 | individual; Lester Vincent, an individual; Steve

20 | Zelman, an individual; Ronald F. Garrity, an

21 | individual; Laura E. Innes, an individual; Tarek

22 | Fahmi, an individual; Charles Wall, an

23 | individual    **Defendant(s)**

1. **Race Discrimination**
2. **Section 1981**
3. **Intentional Infliction of Emotional Distress**
4. **Deprivation of Employment**
5. **Violation of Title VII**
6. **Violation of Public Policy**
7. **Malicious prosecution**
8. **Abuse of process**
9. **Conspiracy**
10. **Section 1985 (3)**

24

25

26

27

28

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

**Defendants:**

Anthony Intil, in his official capacity
as Technical Support Specialist
1279 Oakmead Pkwy.
Sunnyvale, CA. 94805 (408) 720-8300

Candy Mielke, in her official capacity
as Director of Operations
2029 Stierlin Court *(former BSTZ I.S. Dir.)*
Mountain View, CA. 94043 (650) 687-3560

Jim Salter, in his official capacity
As Senior Counsel *(former BSTZ Managing Partner)*
150 Almaden Blvd. #900
San Jose, CA. 95113 (408) 278-4040

Michael Mallie, in his official capacity
As Managing Partner
1279 Oakmead pkwy.
Sunnyvale, CA. 94805 (408) 720-8300

John P. Ward, in his official capacity
as Shareholder/Attorney
1900 University ave. (5th floor)
Palo Alto, CA. 94303 *(former BSTZ Partner)*
(650) 328-8500

Ed Taylor, in his official capacity
As Partner Attorney/Founder
1279 Oakmead pkwy.
Sunnyvale, CA. 94805 (408) 720-8300

Dan Devos, in his official capacity
As Partner Attorney
1279 Oakmead pkwy.
Sunnyvale, CA. 94805 (408) 720-8300

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1

2

3      Diane Robson, in her official capacity
       As HR Manager
4      1279 Oakmead pkwy.
5      Sunnyvale, CA. 94805 (408) 720-8300

6      Lester Vincent, in his official capacity
       As Partner Attorney
7      1279 Oakmead pkwy.
8      Sunnyvale, CA. 94805 (408) 720-8300

9
       Steve Zelman, in his official capacity
10     As Chief Financial Officer (310) 207-3800

11     12400 Wilshire Blvd. (7th floor)
12     Los Angeles, CA. 90025-1030

13     Tarek Fahmi, in his official capacity
14     As Partner
       1279 Oakmead pkwy.
15     Sunnyvale, CA. 94805 (408) 720-8300

16

17     Laura E. Innes, in her official capacity
       as Partner (Simpson, Garrity & Innes)
18     601 Gateway Blvd. Ste. #950
19     South San Francisco, CA. 94080
       (650) 615-4860
20

21     Ronald F. Garrity, in his official capacity
       as Partner (Simpson, Garrity & Innes)
22     601 Gateway Blvd. Ste.#950
23     South San Francisco, CA. 94080

24

25     Charles Wall, in his official capacity
       as owner and Sr. Investigator (CC Invest.)
26     6920 Santa Teresa Blvd. Ste. #208
       San Jose, CA. 95119
27     (408) 578-0300

28

Section 1981 / Deprivation Of Employment / Title VII

# I.

## NATURE OF ACTION

1.      This is a civil rights case involving a law firm's blatant disregard for the Basic rights of dignity, respect, and fair treatment following a complaint of racial harassment made by one of its African-American male employees–Harris Winns.

2.      These acts render Defendant violation of California's Fair Employment and Housing Act, common law provisions as to wrongful termination in violation of public policy.

3.      As a direct consequence of these unlawful acts, Plaintiffs have suffered economic, consequential and other damages, all to its detriment. Defendant's actions and inactions forced Plaintiff to hire attorneys and file suit and, therefore, incurred substantial attorneys' fees and costs.

# II.

## JURISDICTION AND VENUE

4.      The substantial majority of the acts complained of herein occurred in the state of California, in the county of Santa Clara, and venue is proper herein.

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                  Harris Winns v. BSTZ

5.      Jurisdiction is proper because all Defendants reside in the state of

California and each conduct a substantial amount of business therein,

purposefully availing themselves of the laws of this state, and the

corporate Defendants also have offices in this state.

### III.

### AGENCY

6.      Plaintiff is informed and believes and upon such information and belief

alleges that defendants, each of them, at all times herein mentioned were the agents,

employees, servants, joint ventures, and/or co-conspirators of the remaining

defendants, and were acting in the course and scope of such agency, employment, joint

venture, and/or conspiracy; that defendants, and each of them, were doing the things

herein alleged, were the actual and/or ostensible agents of the remaining defendants

and were acting within the course and scope of said agency; and that each and every

defendant, as aforesaid, when acting as a principal, was negligent in selecting, hiring,

supervising and continuing the employment of each and every defendant as an agent,

employee or joint venture; and/or that said defendants approved, supported,

participated in, authorized, and/or ratified the acts and/or omissions of said employees,

agents, servants, conspirators, and/or joint ventures.

## IV.

## PARTIES

7.      HARRIS WINNS ("Plaintiff WINNS") is an individual and at all relevant times was employed in the county of Santa Clara, in Northern California.

8.      The individual defendants are individuals who are all relevant times were residing and working in Santa Clara County.

9.      Defendant   BLAKELY,   SOKOLOFF,   TAYLOR   &   ZAFMAN, LLP.("Defendant BSTZ") is a California limited liability partnership in Santa Clara County.

11.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant Does 1 through 20, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint by inserting the true names and capacities of each such Defendant, with appropriate charging allegations, when they are ascertained.

12.      Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a "DOE" is responsible in some manner

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

for the injuries suffered by Plaintiff and for damages proximately caused

by the conduct of each such Defendant as herein alleged.

13.    At all times herein mentioned, each of the individual Defendants were the

agents, managing agents, servants and employees of the remaining

Defendants, and each of them, and at all times herein mentioned, was

acting within the course and scope of said agency, service and

employment.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.    Plaintiff WINNS has filed complaints with California's Department of Fair

Employment and Housing and Equal Employment Opportunity Commission and

received right to sue letters. Plaintiffs have therefore exhausted their administrative

remedies.


This employment discrimination action is brought pursuant to Title VII of the Civil

Rights Act of 1964 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, a

thorough and intentional violation of 42 U.S.C. 1983, equitable and other relief is sought

under 42 U.S.C. Section 2000e-5(g). In addition, Defendants have maliciously, hatefully

and intentionally violated California Labor Code Sections 1050, 1052 and has willfully trampled upon, and therefore, attached themselves to the stipulations set forth in Labor Code Section 1050 and 1054.

For purposes of this complaint, the term "Defendants", where not otherwise qualified, shall refer to all named Defendants individually or collectively, and when used in conjunction with allegations of unlawful conduct, shall mean that each Defendant committed such act and/or is legally accountable for such act(s) either in concert with others, even if it involves a willing third or fourth party or as a willing sole participant, fully conscious and without cognitive impairment.

Furthermore, Blakely, Sokoloff, Taylor & Zafman, will alternately be referred to herein, and within the confines of the four corners of this document sometimes as "Defendants, They, Respondents, Declarants or Blakely-Sokoloff."

### **Background**

I provided technical support as a Technical Support Engineer at Blakely, Sokoloff, Taylor & Zafman, herein, sometimes referred to as BSTZ, a patent firm located in Sunnyvale, CA.; from February 2000 to February 2002. Respondent terminated me because of my unwilling involvement in a verbal dispute with a so called co-worker,

Defendant Anthony Intil, approximately 6'0, 200 pounds. on 2.13.02. Defendant

Candace Mielke (White female), Director of Information Systems (I.S.) came into our

workspace and asked Anthony, "how are thing going between you and Harris"? He

responded to her by stating in a loud tone of voice, "I don't care about that punk ass

bitch". An argument ensued that lasted approximately (2) minutes. He then got up from

his chair and approached me in an offensive manner at my desk of the common

workspace that we shared. He had both fists clenched as if in preparation in an attempt

to strike me. I then stood up from my desk in a defensive manner to protect myself. The

supervisor ran over from the entrance of our workspace and stepped in between us to

halt what could've resulted in a physical altercation. He got within (3) feet of me. After

calming us both down, the supervisor then sent us both home early for a supposed

cooling-off period.


The next morning on (2.14.02), there was a formal counsel letter on my desk explaining

the incident that took place the day before in detail. The letter also gave us both a

warning that another incident such as this would not be tolerated in the future. The

supervisor then went on to say that if it did happen again, we both could either be

reprimanded again or have our employment terminated with the company. Well,

approximately (2) hours later that same day (2.14.00). I was asked by Defendant Mielke

to report to her office because Defendant Wilson, White female/firm administrator

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

wanted to speak with me. I got up from my desk and entered Candace's office. I sat on

the opposite side of the table where Defendant Wilson sat in the supervisor's office.

Defendant Wilson said, <u>"the firm's partners have decided collectively to terminate your</u>

<u>employment because of the argument with Anthony, so, here is your final pay check,</u>

<u>severance pay and another check for vacation and sick-leave accrual."</u> I was surprised

and became very emotional. During the remainder of the conversation with Defendant

Wilson, I was asked to sign a few documents under emotional duress. Prior to signing

the documents, I attempted to ascertain from Karen why was I being terminated. She

became quite adamant that I sign the documents immediately and that there was

nothing she could do to overturn or even question the decision of firm's partners. The

monotone of her voice expressed "haste". Defendant Wilson then interjected, "you must

sign these documents before we could give you the checks." "After signing the

documents, you must leave the premises immediately." I was not given adequate time

to read the documents and absorb the true meaning that it secretly harbored. While

having this meeting with Defendant Wilson,.. Anthony Intil and Dave Montoya,

Telecommunications Engineer, approximately 6'2 230 pounds, continuously paced back

and forth near the entrance of Defendant Mielke's office where the terms of my

termination were being discussed. At one point, Defendant Intil stood at the door and

stared at me in a hostile manner with his fists clenched again for approximately (1)

minute. The distance from the table where I sat, to the entrance of her office totaled

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v.  BSTZ

approximately (7) feet in distance. I signed the documents because I believe that his

defensive stance near the entrance represented a non-verbal but physical threat that

could've resulted in physical bodily injury to me if I did not sign the documents. I

believe that he stood at the door as an enforcer to induce my cooperation with regard to

signing any documents that was placed in front of me by Defendant Wilson or

Defendant Mielke. Although my former co-worker initiated the argument, I was

terminated. Therefore, I basically got _terminated for defending myself_. My former co-

worker, Defendant Intil was not terminated and continues to work for BSTZ and in

essence, continues be rewarded for his complicity in bringing about my constructive

discharge from BSTZ.


BSTZ failed offer me the opportunity to work at another branch (San Jose, Ca.) of the

company. They acted unreasonably and refused to explore other options so that I could

continue to participate in the labor market and be in a position so that I could provide

for my family and myself. Even if it were a job that was not of my normal classification,

I would've gladly taken it. For the reason just stated, the respondent's actions were

egregious, planned, orchestrated and constructive to its very core while engineering my

termination.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1    I believe that the respondent's actions were vividly racist as well. They've utilized

2    Anthony as an instrument to interface with me in a confrontational manner.

3    Additionally, their actions were pretextual and oppressive in an orchestrated and

4

5    constructive campaign to hide their true racist intentions. By design, they've attempted

6    to "side step" the federally protected statutes by using Anthony (Black male, Ghana

7    national) as an agent to conduct its "dirty work" in addition to and perhaps,...deflect

8

9    and foreclose upon possible future liability on the basis of race. BSTZ was deliberate,

10   calculating and egregious in its determination and mean-spirited conviction to

11   terminate my employment and intentionally dis-enjoin my participation from the labor

12

13   market. Their actions have caused my family and I to suffer immensefully and we

14   continue to suffer from the suffocating effects of Blakely-Sokoloff's actions from over

15

16   five years ago. It appear that these Declarants incorrectly believe that they could do this

17   to my family and I without having to eventually pay a price for maliciously,

18

19   connivingly and hatefully doing so. Apparently, BSTZ falsely held in mind thought

20   they could do this to my family for free. THEY should brace themselves, for I'm not

21

22   only going to expose them for who THEY truly are but, ...prove them wrong in naked

23   view of the jury, the presiding judge and in addition to whom ever they may retain to

24

25   represent them.

26

27

28

Plaintiff: Harris Winns (Pro Per)                     Harris Winns v. BSTZ

Furthermore, Defendant Karen Wilson, firm Administrator, states within her Ex Parte

application for a Temporary Restraining Order against me that, due to her experience

and witnessing of a massacre at another firm in the City of San Francisco that in

essence, it appeared that I would commit a massacre as well. If I had a friend that work

professionally in a field that studied the behavior of individuals and another friend of

mine displayed behavior that included persistent, unsolicited initiation of conversations

and thought patterns that always and eventually lead to an event that took place years

before, I'd probably believe that my friend was suffering from some type of "Post

Traumatic Stress Disorder". A portion of being a good friend is to be honest, and that

friend in particular would be referred immediately, so that he may be able to process

this far removed experience and quit attempting to buttress unfounded fear with

current events that has no realistic connection whatsoever to another event that

transpired years before, in an attempt to justify recent trifling, and in fact, wrongful

acts.


Additionally, I had previously reported to Defendant Mielke that Defendant Intil made

spontaneous statements to no one specific, but always, it seems to be mad in my

presence, such as, "we could take this outside and knuckle up." Furthermore, I also

informed her that I did not appreciate the manner in which Defendant John Ward spoke

to me on more than one occasion. The manner in which he spoke to me was always

from a belittling angle. To my knowledge, nothing was ever done to quell the empty

chatter that continuously emanated from these two individuals in particular. She

should be ashamed of herself.

Moreover, Charles Wall, owner and Sr. Investigator at CC Investigations, an

investigative agency hired by Blakely-Sokoloff, stated that on February 16th, 2002, at

6:30pm, he saw me checking the doors and peering through the windows of a building

on my former employer's property. The attorneys that represented Blakely-Sokoloff,

brought up this supposed incident at the preliminary hearing. I then stated to the judge

and the attorneys representing BSTZ that: "If this investigator saw someone on my

former employer's premises, well, why didn't he call the police and had that individual

arrested or at a minimum, gave chase in his automobile in hopes of capturing this

trespasser?" The judge's chamber became very quiet for a few seconds after posing this

question but the attorneys that represented my former employer never answered this

particular question. Therefore, it must be concluded that the investigative agency that

was hired by BSTZ failed to do their jobs, which was to provide security and I would

assume surveillance of BSTZ's premises as well. Obviously, this individual that the

Investigator allegedly saw, appears to have been either a figment of his imagination;

perhaps the residual effects of sleep deprivation; perhaps an altered state of mind due

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

to the after effects of a controlled substance that was consumed prior to reporting to

duty that it impaired his judgment so greatly that he surpassed the threshold of a

heightened state of grandiose delusion. Additionally, Defendant Wall retired from San

Jose Police Department as a Detective. He states in his Ex Parte for a restraining order to

be placed against me that he saw me on six separate occasions on the premises of

Blakely-Sokoloff. But yet, he doesn't have any video footage of anyone on the premises

of my former employer's premises. Again, he failed miserably to do his job, thereby

neglecting his duties. He shouldn't be so proud to state this openly, especially within

the four corners of a legal document. Any reasonable person would've anticipated this

trespasser to return, giving ample opportunity to setup additional video surveillance to

capture this individual on video committing whatever crime he/she was intending to

commit from many different angles. At such a late stage in his career, Defendant Wall

should not have made such a gross miscalculation of judgment. It appears that some

individuals have an affinity for insulting their own intelligence or lack thereof.


I surmise that the investigator's credibility or emotional state would've been called into

question had he called the local authorities and subsequently was unable to give them a

full or partial description of the supposed trespasser and that the authorities were

unable to find any subsequent forensic evidence on the door handle other than the

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1    individuals that had a legitimate reason for their finger-prints to be present on the door

2    handle in the first instance.

3

4

5    More fundamentally, I believe that the above-mentioned statement made by this so

6
     called investigator was done so with the specific intent, so as to enhance the appearance
7
8    and foster the perception of my character as one that's fully immersed with criminal

9    intentions and that my state of mind was teetering on the brink of a mental melt-down,

10
     due to the employment termination by Blakely-Sokoloff. It appears that this is the
11
12   attitude harbored by some that gives rise to the notion of a false, demeaning and

13
     derogatory notion that minorities in general and African-American men in particular,
14
15   are innately and inherently fused with characteristic traits that are criminal in nature

16
     from the onset of birth. This is the type of attitude and behavior that makes me wonder:
17
18   *What are the dynamics within the mental confines of individuals and groups that harbor these*

19   *hateful and feeble-minded perceptions?*

20

21

22   In some, BSTZ performed the deeds. In none, did BSTZ prevent the deed. In none did

23
     BSTZ take a cursory glance at my claims prior to termination. In none, did BSTZ punish
24
25   the deeds. Therefore, it must be deemed an act that was committed with malicious and

26   specific intention to inflict emotional stress, humiliation and an abundance of mental

27
     anguish leading to somatic injuries against my person because I'm African-American.
28

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

Furthermore, after I was terminated, and two weeks prior and after Blakely-Sokoloff

took me to court, it appears that CC Investigations, an investigative agency hired by

BSTZ tailgated my family and I everywhere we went. My wife and I were in a state of

emotional duress including fearing for the rest our family's safety as well. In fact, the

individual that followed my wife and I actually rode the same elevator with my wife

and I, including the attorneys that were representing Blakely-Sokoloff. The attorneys

representing Blakely-Sokoloff pretended as if they did not recognize the tall, slender,

blonde White-male. This was so staged. I sincerely believe that the experts in

Hollywood couldn't have written a more fined-tuned and bogus script. Additionally,

when my wife started crying in court, due to her realizing the extent to which seasoned

attorneys would stretch a lie to actively and further conceal the truth, Laura Innes,

attorney for Blakely-Sokoloff, attempted to console her, this condescending act alone

made my stomach churn violently.


Some time in mid or late April of 2002, my wife and I sat in my attorney's office and

asked her if the restraining order would prevent me from obtaining employment. My

attorney immediately telephoned Laura Innes, who then told my attorney that the

restraining order would not in any fashion, shape or form prevent me from getting

another job. This is another LIE. In fact, It's extremely hard to believe that Defendant

Innes did not know the results of a permanent injunction. She has given many lectures, gotten involved in holding workshops for further training of managers, in addition to writing articles on the topic various employment issues, including the arbitration of employment issues and effective use of termination agreements, and is a frequent speaker to client and community groups. Therefore, Defendant Innes knew or should have known that this restraining order would eventually cause an abundance of upheaval and unrest in my life. At bottom, it appears that this entire ordeal was planned and orchestrated with a specific intent,....that intent was to destroy me. Only by the grace of God, I'm still standing.

On April 8th 2002, during the afternoon my wife noticed a Red and White early model Ford Bronco with California License plate (#4TNJ464) parked near the entrance of the cul-de-sac area of her parent's residence, which is where we resided at that time. The driver was a White Male with blonde hair who appeared to be approximately (30) years old. The following morning, the same vehicle was parked near the end of the street where we reside. I was able to take a picture of the person driving the vehicle as well. I then went to San Jose Police Dept. to have them verify whom the vehicle was registered to. The officer at the desk informed me that the vehicle was registered to an individual by the last name of "Tarrant" from the Los Angeles area. The officer said that he was unable to divulge any other information regarding this individual. The officer also

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

1   stated that if we saw this vehicle again, that we should immediately notify them. Here,

2   it would not be far-fetched to believe that respondent dispatched this individual to

3   serve a dual purpose. First and foremost, to conduct a "scare tactic" in an attempt to

4   produce extreme fear to the extent that I'd be intimidated to the point of not filing a

5   lawsuit. Secondly, the driver of the Ford Bronco is an individual far removed from the

6   San Jose area, which gives the initial appearance that there is no connection with

7   respondent. <u>But, BSTZ's headquarters office in located in Los Angeles</u>. I presume that

8   this was a slight oversight on their part to select an individual from the Los Angeles

9   area to conduct surveillance on my family and I, whom obviously didn't have the

10  appropriate training or "know how" in order to remain inconspicuous and incognito to

11  conduct such an operation in the first instance. I was merely looking for another job in

12  order to provide for my family and myself.

13

14  Moreover, it appears that BSTZ incorrectly believes that they're above the law and

15  therefore, inoculated against being compelled to answer questions put forth by me from

16  the plaintiff's side of the courtroom. Furthermore, it appears that respondents continue

17  hold a rigid posture befitting that of an organization that believes that they're

18  privileged and therefore does not in any manner, shape or form intend to take

19  responsibility for their adverse actions. Even if those actions are the direct result of

20  impoverishing a former employee's family. THEY should be ashamed of themselves.

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                Harris Winns v. BSTZ

Any individual who purports to have an affinity for the law and swore to uphold it and

then subsequently and intentionally fails to do so, whenever and wherever injustice

raises its ugly head and presents itself, I'll submit to you,…. *a law breaker.*

Indeed, it was and still is vividly clear that the overarching objective here was to

willingly fail to yield to public policies relative to employment terminations; willingly

fail to abide by the firm's own policy and procedures; willingly fail to yield to

guidelines set forth in case law precedents; willingly and contemptuously attempted to

foster the false perception of my character as an individual imbued with the personality

traits of a "disgruntled" former employee and that my state of mind for three years was

full of rage and hell-bent on revenge. Blakely-Sokoloff's entire theory relative to my

discharge,…. IS A LIE.

Here, it is unarguable BSTZ intentionally inflicted extreme emotional distress upon my

family and I. And as a result of the intentional, malicious, reckless, pretextual and

willful acts of retaliation by BSTZ, I have has suffered damage to my reputation,

somatic injuries, (*Murphy v. Internal Revenue Service, 2007 U.S. App.*) loss of earnings and

placed under a glowing light of humiliation and suspicion for 5 years. In fact, due to

Plaintiff: Harris Winns (Pro Per)                                           Harris Winns v. BSTZ

1    BSTZ's machinations, their collective act has impoverished my family and I to the

2    extent that we live in squalor to this day. As a direct result of their actions, I'll highlight

3

4    our living conditions by pointing to the fact that five of my family members live on one

5    mattress on the floor, because of our lack of finance to purchase appropriate and

6    additional furniture.

7

8

9    Furthermore, and as a direct result of BSTZ's actions and in addition to what's

10   highlighted in the previous paragraph, I've been unable to place my kids in preschool,

11

12   again, due to a lack of finance. Indeed, my kids will eventually display the effects of

13   being unable to attend preschool, which would've kept them abreast with other kids

14

15   their age in terms of learning and progressing at a normal rate of social interaction and

16   development. BSTZ has intentionally robbed my kids of this opportunity.

17

18

19   Moreover, I was under the care of my doctor due to work related stress and clinical

20   depression. He will attest to my emotional state and overall condition at the time that I

21

22   was willfully, mean spiritedly and constructively discharged by BSTZ.

23

24

25   Furthermore, BSTZ was well aware of my situation regarding my doctor and my overall

26   condition. Therefore, it's obvious that what BSTZ attempted to accomplish here, relative

27

28   to stalking my family and I was to produce an abundance of fear through intimidation,

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

a causative factor for bringing further stress upon my life by introducing and

implementing terroristic and Gestapo type activities targeting my family and I. Perhaps

this was an attempt to overload my sensories to such an extent and deprive them of the

necessary stimulation required for peak performance, that I'd eventually entertain

suicidal thoughts and consequently fall prey to suicide. Perhaps THEY wanted to de-

territorialize my temperament to the extent that I'd be so imbued with frustration due

to being terminated by them that I'd strike back with a vengeance against them. Here, it

is obvious that the collective Defendants grossly miscalculated my strength. If I had

struck back at Defendants, I would've unwittingly and strategically placed THEM in

such an offensive position that THEY could've easily notified the local authorities and

had me placed in confinement,.... if I had acted. And since I possess the internal

wherewithal to resist reacting in regards to their silly game, the plan THEY devised,

miserably failed. In fact, it failed each and every day for five years due to the fact that

each day presented an opportunity for their plan to initialize. That's 1,725 days that

Blakely-Sokoloff strangled the hopes and suffocated the dreams of my family and I.

Even if the mere 120 days that I did work in early 2006 is subtracted from the above-

mentioned figure, its still 1,605 days that my family and I were held in bondage.

Declarants should be ashamed of themselves.

Section 1981 / Deprivation Of Employment / Title VII

Moreover, the firm's policy manual section (1.0) specifically refers to "Equal

Employment Opportunities". And further states, "It is the policy of the firm to employ,

retain, promote, layoff or terminate and otherwise treat all employees and job

applicants solely on the basis of merit, competency, qualification and work

performance. Here, BSTZ failed to deliver and act accordingly as promised in regards to

its own policy. The firm's mission and Equal Employment policy is in stark contrast to

its actual employment practice(s).


### BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN
### (policy manual)

BSTZ's policy manual section (62.0) also refers to "Question and problem resolution

procedure. This section states, "If an employee has a problem, talk it over first with

his/her supervisor. The supervisor has the authority to settle most employee relation's

questions arising in his/her area of responsibility.


Again, BSTZ's policy manual section (52.0) covers "Rules and Standards of Conduct".

Section (# 10) states, "Threatening, intimidating, coercing, harassing, or otherwise

interfering with the work of fellow employees are considered violations of the above

mentioned section and may be grounds for disciplinary action or termination.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

Section (# 4) under Rules and Conduct states, "fighting, scuffling, or indulging in horseplay may also be grounds for verbal or written reprimand, suspension or termination of any violation of these rules.

Respondent is an at-will employer but this does not give them immunity from adhering to *Title VII of The Civil Rights Act of 1964 and 1991*, nor does it absolves them of their responsibilities to terminate an employee without "good cause".

I was never given an opportunity to explain the incident in full, regarding the issues of my termination, nor did BSTZ's management make a good faith effort to conduct a proper investigation regarding this incident. Again, it appears that the firm has developed a pattern of refusing to adhere to; and continues to deliberately nullify its own written policy by clinging to the "at-will" employment theory as if this legal misnomer issues *carte blanche* authority to terminate an employee under any and all circumstances. Even if a former employee's civil rights were intentionally uprooted in the process of termination, still, Defendants displayed an abundance of indifference from a collective standpoint. Defendants may have had the right to terminate me under the doctrine as an "at-will" employee but, THEY did not possess the right to <u>deprive me of liberty of employment</u> by broadcasting UNTRUTHS and thereby impugning my character. Even if this was accomplished through a third party, fourth party in addition

Section 1981 / Deprivation Of Employment / Title VII

to the utilization of electronic means, there is still an element of direct, willful and

casual attachment that has a trajectorial path that leads directly back to the originator of

these LIES.


Here, Defendants intentionally failed to adhere to the *Due Process Clause* in addition to

violating the (5th and 14th amendments) to the United States' Constitution with respect

to them intentionally arresting my liberty to freely obtain employment and provide for

my family and I without them strategically applying restraints and tortuously utilizing

the judicial process to provide cover. Defendants knew or should have known

individually and/or collectively that what they were doing was egregious, pretextual,

malicious and outright wrongful in addition to being an affront to the State of

California's constitution and the United States' constitution as well. It appears that

Blakely-Sokoloff incorrectly believed that they could do this to my family and I for free

and avoid having to eventually pay a price for wrongfully doing so.


Little did I know that immediately after being wrongfully terminated, that I'd be

catapulted headlong into an abyss of frustration, disappointments, stress,

unemployment and rejections by potential employees that lasted <u>five horrific and</u>

<u>nightmarish long years.</u>

Plaintiff: Harris Winns (Pro Per)                                      Harris Winns v. BSTZ

Prior to this so-called "Workplace Violence Restraining Order" expiring on April 30th

2007, I rarely received a response from an employee after submitting an employment

application or resume regarding a vacancy. In fact, if I did receive a response, more than

likely, it was an auto generated response stating in general, "we will review your

qualifications and if we deem that you are a good match for the vacancy in question we

will contact you to set-up an interview. If not, we will keep your resume on file for (6)

months." Which is to say in other words, "not only do we believe that you're a criminal

but, a violent criminal. This is according to court and police records. Therefore, we

cannot and will not take a chance on hiring someone like you who is evidently

atrociously imbued and fraught with violent tendencies." In general, the same thing

happened when I applied for an apartment. I was continuously rejected due to

Defendants intentionally creation of an aura of fear, suspicion and lie in wait regarding

my character.


More fundamentally, by May 30th, 2007, one month after this so-called "workplace

violence restraining order" expired, I had attended (4) interviews. Prior to the "order"

lapsing, I hadn't been invited to an employment interview in (6) years. This is even

further indicative of defamation against my person due to Defendants intentional,

malicious and pretextual acts. In fact, I was hired on June 1st, 2007, one month after the

expiration of the restraining order. This is unquestionably further indication that the

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

restraining order was intentionally utilized as an instrument not only to defame my

good name but, also to deprive me of, and therefore, cripple my attempts to gain

employment.


One of the burning questions here are: How could individuals who profess themselves

to be abundantly intelligent, abundantly fair, overwhelmingly benevolent and possess

an astoundingly high level of affinity for the United States' constitution and State laws

that have with stood the test of time, but yet, <u>consistently get it wrong</u>? It is of my

opinion that the only manner in which individuals or groups to do this is to

strategically cultivate, nurture, plan and subsequently spring forth ideas, projects and

events that are fraught with malice in the first instance. This is not justice......, this is the

antithesis of justice, cloaked and perpetrating a fraud in the outer garb as justice.


### The State Bar of California Rules of Professional Conduct
### Rule 2-400. Prohibited Discriminatory Conduct in a Law Practice


(A) For purposes of this rule:

    (1) "law practice" includes sole practices, law partnerships, law corporations,
    corporate and governmental legal departments, and other entities which
    employ members to practice law; (2) "knowingly permit" means a failure
    to advocate corrective action where the member knows of a
    discriminatory policy or practice which results in the unlawful
    discrimination prohibited in paragraph (B); and

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

(2) "knowingly permit" means a failure to advocate corrective action where
the member knows of a discriminatory policy or practice which results in
the unlawful discrimination prohibited in paragraph (B); and

(3)"unlawfully" and "unlawful" shall be determined by reference to applicable state or
federal statutes or decisions making unlawful discrimination in employment and in
offering goods and services to the public.

(B) In the management or operation of a law practice, a member shall not unlawfully
discriminate or knowingly permit unlawful discrimination on the basis of race ,
national origin, sex, sexual orientation, religion, age or disability in:

(1) hiring, promoting, discharging, or otherwise determining the conditions
of employment of any person.

## Adverse Employment Action
## Motivated by Protected Activity

An employee can prevail in showing that adverse employment action was motivated by

protected activity where there is direct evidence of discrimination. *TWA v. Thurston*, 469

U.S. 111, 121 (1985); *Walker v. Prudential Property & Casualty Insurance Co.*, 286 F.3d 1270,

1274 (11 Cir. 2002). Direct evidence of discrimination is evidence that "will prove the

particular fact in question without reliance on inference or presumption." *Pitasi*

*v.Gartner Group, Inc.*, 184 F.3d 709, 714 (7th Cir. 1999). Such "evidence must not only

speak directly to the issue of discriminatory intent, it must also relate to the specific

employment decision in question." *Id*. In the absence of direct evidence of

discrimination, a complainant makes out a *prima facie* case of retaliation by showing he

Plaintiff: Harris Winns (Pro Per)                                   Harris Winns v. BSTZ

or she is a member of a protected class, that he or she engaged in protected activity, that

the respondent took adverse action, and that the respondent had knowledge of his or

her protected activity. The threshold for establishing a prima facie case is low and the

amount of evidence needed to "infinitely less than what a directed verdict demands."

*Saint Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2751, 125 L. Ed. 2d

407 (1993). The burden then shifts to the respondent to produce legitimate

nondiscriminatory reasons for taking the adverse employment action. *Reeves v.*

*Sanderson Plumbing*, 530 U.S. 133, 142, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000);

*Walker v. Prudential Property & Casualty Insurance Co.*, 286 F.3d 1270, 1274 (11 Cir. 2002).

*C. f.* 42 U.S.C. § 5851(b)(3)(B) (2002) (stating that in ERA cases the employer must show

by "clear and convincing evidence that it would have taken the same unfavorable

personnel action in the absence" of any protected activity); *Dysert v. United States*

*Secretary of* Labor, 105 F.3d 607 (11th Cir. 1997). The respondent's burden is one of

production and not of persuasion.


## Letter to Laura Innes
### (Simpson, Garrity & Innes of So. San Francisco)


Laura, your client have placed my life under siege, aggravatedly assaulted us and has

bared witness in amusement as my family and I lives have atrophied. My life has been

emaciated by Blakely, Sokoloff's knee-jerk reaction in an effort to taint and stifle any

Plaintiff: Harris Winns (Pro Per)                              Harris Winns v. BSTZ

suit that I would've filed. This is the cusp of their actions and it's imperative that they

"fix it".


As a direct result of BSTZ's adverse actions, I've listed below, a few things that will

assist in painting a graphic picture of what has happened since being terminated:

   1) My wife and I, four kids, (6) individuals total, live in one room. (imagine that, it's
      not a Master bedroom either.)

   2) I've had my automobile repossessed. (credit status: rock bottom)

   3) My wife and I had to apply for and received Social Service assistance.

   4) I was unable to obtain employment because of the restraining order.

   5) My family and I have had to move from California to the state of Washington in
      an attempt to lessen the economic impact on our lives.

   6) My wife and I were unable to get an apartment because of the restraining order.
      (Again, the potential landlord feared having a violent tenant on the premises
      after conducting a background check.)


All of my troubles listed above, among others, are all manifestations of the aftermath of

the restraining order. The nexus between the injunctive relief and my current dilemma

is overwhelming. I would've much rather been layed off by Blakely, Sokoloff. At least

then, BSTZ wouldn't have had the opportunity to have the contents of my life strewn

about on a pathway of lies in a malicious and hateful manner. Instead, they've chosen to

drastically reduce my ability to control the destiny of my own life and all the while,

relish in their triumph of deceit. They've commandeered the underpinnings of my life

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

and has purposefully steered it into an abyss without a basement. Yet, telling of the

attitude that exists at Blakely-Sokoloff, I surmise that an abundance of indifference is

what will be their rallying response.

BSTZ's impingement on my life has forever scarred my employment record in a manner

that has left me with the balance of an unexplained five-year unemployment gap. How

am I supposed to explain this to potential employers? What do you propose that I tell

them Laura? Respondent knew or should have known that the manner in which my

employment was terminated was illegal and facially unconstitutional. It appears that

your client was/is under false impression that the term "at-will" employment dispenses

and affords them cart-blanche authority and protection during a judicial or

administrative hearing. I will place their incorrect notion to the test under cross-

examination.

Laura, criminals come in many different forms, styles, gradients and variations.

Criminals report to duty rather they're in a three-piece "Brooks Brother's" suit or the

infamous white sheet of the "KKK". Moreover, high-ranking officials from Enron and

Worldcom, among others, have been tried, convicted and subsequently escorted to

prison in handcuffs for their complicity in the defrauding of millions of shareholders.

My point is, criminality is criminality, regardless of who the perpetrator is or what the

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

outer garb of the day may be. Rather it be an individual or a group acting in concert

covertly and relentlessly to achieve the proverbial goal; "the end justifies the means".

Clearly, this is the mode of action that BSTZ employed against my family and I. THEY

will eventually pay a heavy price for doing this to my family and I in the appropriate

arena.


Some things are apparent, and it's apparent that the long out-stretched arm of justice

sometime reaches back in time and is compelled to confront an "injustice and turn it

into justice". It's also apparent that Blakely-Sokoloff committed these acts under an

unfortunately false impression that they wouldn't eventually have to pay a price for

connivingly, maliciously and hatefully doing so. But, the United States' constitutional

has never afforded sanctuary for those opposed to the rule of law, nor does it hold an

affinity for those fervently engaged in the fraudulent concealment of the truth, but

alternatively, it has always repudiated and sometimes crushed those individuals and

organizations that intentionally cultivate and maliciously broadcast and propagate "LIES".

More fundamentally, and in other instances, the long-arm of justice has to reach no

further than the file cabinet across from someone's cubicle and begin to address

capricious behavior from a few years ago and confront it accordingly. There are some

individuals that are no longer with your client's firm for reasons unbeknownst to me.

But, they will eventually be ordered by the appropriate person to come forth and

Section 1981 / Deprivation Of Employment / Title VII

explain actions, their complicity and knowledge relative to my wrongful termination and subsequent 5 years of unemployment.

Blakely, Sokoloff has put in place the necessary elements of a chain reaction in motion, causing intentional injuries that were planned and calculated. No less tragic it would be, if someone were to shove an individual under the carriage of a fast moving street bus. This act would surely produce injuries, great bodily harm, in all likelihood,… a fatality. In essence, your client has committed both of the above-mentioned egregious and abhorrent acts against my character and employment potential so that I would be unable to provide for my family. The stature of my character and employment potential has been crippled to the extent that they've both been rendered ineffective and therefore, impotent. Again, these conditions have been cultivated and nourished by respondents, and is not of my making.

During the summer of 2004, my family and I saw John Ward, former partner at BSTZ at San Jose's Valley Fair Mall near the Food Court with his toddler Daughter. Apparently, he didn't recognize me at first, but as soon as he did, he hid behind a pillar. My wife and I looked at each other in amazement and thought that this was very peculiar for a man of his age or any man to hide behind a pillar at the local mall. At first, I attempted to write it off as a Father playing "hide-and-seek" with his Daughter but, my sensories

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

wouldn't allow me to do so because she was sitting quietly in her stroller. Not only was this somewhat comical but, on a more serious note, it also gives a glimpse of the current human condition to a certain extent.

That when a man or group begins to believe his or their own concocted LIES, their behavior will eventually follow and conform to what has already been cultivated, nurtured and fathomed in their minds. I'm unable to grasp and explain this type of behavior but there is something amiss here.

Parenthetically, it appears that the above-mentioned Defendants either doesn't understand or intentionally refuses to accept the notion and common sense theory that the Truth and Untruth will never simultaneously occupy the same space for any length of time worth calculating. However, It's conceivable that this may be possible for a mere one-thousandth of a fraction of a second at the most. When the Truth enters into the same space in which the untruth already improvidently exists, the untruth must immediately and necessarily disappear.

## California Labor Code Section 1050

Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any

Plaintiff: Harris Winns (Pro Per)                                        Harris Winns v. BSTZ

misrepresentation prevents or attempts to prevent the former employee from obtaining

employment, is guilty of a misdemeanor.


## California Labor Code Section 1054

In addition to and apart from the criminal penalty provided any person or agent or

officer thereof, who violates any provision of sections 1050 to 1052, inclusive, is liable to

the party aggrieved, in a civil action, for treble damages. Such civil action may be

brought by such aggrieved person or his assigns, or successors in interest, without first

establishing any criminal liability under this article.


It still holds true and in general [vol. 271 U.S. 583, 601], that lawful acts or conditions

may become unlawful when done or imposed to accomplish an unlawful end.


Moreover, Blakely-Sokoloff had so saturated and bludgeoned my character with the

untruth that, that a former employer, subsequent to BSTZ, who employed me for a mere

(120) days in 2006, eventually and wrongfully in fact, terminated my employment

which was predicated on the basis that my character was hopelessly flawed and

impregnably imbued with violence.

Indeed, this entire incident is not aligned with any sort justice but,.....it's indelibly the

antithesis of justice. In any event, it remains to be seen rather or not the Defendants'

collective and incorrectly enunciated position trumps already pronounced case laws

and the United States' Constitution.


## Authorities Regarding Employment Deprivation

Posner, Chief Judge, United States District Court for the Northern District of Illinois,

Eastern Division., *Olivieri v. Rodriguez (7th Cir. 1997)*. "When the character and

circumstances of the defamation are such as to have "foreclose[d] his freedom to take

advantage of other employment opportunities" he can bring a suit based on the

deprivation of his liberty of employment or occupation. Paul v. Davis, supra, 424 U.S. at

710, quoting Board of Regents v. Roth, 408 U.S. 564, 573 (1972); see also, e.g., Bigby v.

City of Chicago, 766 F.2d 1053, 1057 (7th Cir. 1985); Colaizzi v. Walker, 812 F.2d 304, 307

(7th Cir. 1987); Johnson v. Martin, 943 F.2d 15, 16 (7th Cir. 1991).


Posner, Chief Judge; *Lawson v. Tippecanoe County (7th Cir. 1984)* "the concept of liberty in

Fourteenth Amendment jurisprudence has long included the liberty to follow a trade,

profession, or other calling. This liberty must not be confused with the right to a job;

States have no constitutional duty to be employers of last resort; but if an individual is

Plaintiff: Harris Winns (Pro Per)                              Harris Winns v. BSTZ

excluded a person from a trade or calling, it is depriving him of liberty, which it may

not do without due process of law."

## Authorities Regarding IIED

To sustain a claim for IIED plaintiff must show defendants engaged in "outrageous

conduct, done intentionally or with reckless disregard of the probability of causing

emotional distress, resulting in the suffering of extreme emotional distress, actually or

proximately caused by the outrageous conduct." *Sheltra v. Smith*, 136 Vt. 472, 476, 392

A.2d 431, 433 (1978). Plaintiff's burden on this claim is a "heavy one" as he must show

defendants' conduct was "so outrageous in character and so extreme in degree as to go

beyond all possible bounds of decent and tolerable conduct in a civilized community

and be regarded as atrocious and utterly intolerable." Dulude, 174 Vt. at 83, 807 A.2d at

398. The court makes the initial determination of whether a jury could reasonably find

that the alleged conduct satisfies all the elements of an IIED claim. *Jobin v. McQuillen*,

158 Vt. 322, 327, 609 A.2d 990, 993 (1992) (citing Restatement (Second) of Torts § 46,

comment h (1965).

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

## **Authority Regarding Blacklisting**

California Labor Code 105, any person, or agent or officer thereof, who, after having

discharged an employee from the service of such person or after an employee has

voluntarily left such service, by any misrepresentation prevents or attempts to prevent

the former employee from obtaining employment, is guilty of a misdemeanor.

Here, as a preemptive strike against dark forces that may eventually attempt to infuse

the statute of limitations as a defense, I'll submit to you a sound and philosophical view

of the principles of the statutes of limitation. *Bailey v. Glover, 88 U.S. 342, 349 (1875).*

"They were enacted to prevent frauds; to prevent parties from asserting rights after the

lapse of time had destroyed or impaired the evidence, which would show that such

rights never existed, or had been satisfied, transferred, or extinguished, if they ever did

exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it

concealed itself until such time as the party committing the fraud could plead the

statute of limitations to protect it, is to make the law which was designed to prevent

fraud the means by which it is made successful and secure."

In fact, the day I was unshamefully hauled into court by BSTZ's Attorney Ronald F.

Garrity, who also represented Blakely-Sokoloff, walked over to the clerk's window and

Plaintiff: Harris Winns (Pro Per)                     Harris Winns v. BSTZ

stated to her, "I need a workplace violence restraining order." It should not be this easy

to destroy another man's life through such an unchecked and intentional gross

misrepresentation.

## ADDENDUM

Your Honor, I vehemently oppose Blakely-Sokoloff's attempt to strike my complaint.

Theses Declarants have intentionally placed my family and I in an untenable position.

In fact, an overwhelmingly uncomfortable position to say the least. Through out the

Demurrer of the Defendants, they've rushed to embrace the statute of limitations as if

it's the Holy Grail of safety nets designed specifically to safeguard those who have done

wrong, by not only violating public policy but, fundamentally crossing the threshold of

immorality in a civilized society.


Furthermore, I was intentionally placed in a position by Blakely-Sokoloff that

essentially barred me from participating in the employment market for 5 years. Here,

the element of "exceptional circumstances" will eventually override the statute of

limitations raised by these Declarants. Even if I did file my complaint in a timely

fashion, the complaint would've still had to be served on the Defendants. Here, it

appears that the Defendants are under the incorrect assumption that having a complaint

served upon Defendants is universally free of charge. I was intentionally placed in this

position so that my family and I would be indigent, suffering and without money so

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                        Harris Winns v. BSTZ

1   that a defense could not be mounted against them in court. This is the root of their ill-

2   conceived plan in the first instance, which is, for my family and I to be without money

3   for a period that would out stretch the statute of limitations and hope and pray that the

4   court would bound my case to the already established limitations. At bottom, these

5   Declarants have intentionally participated in a scheme of which the rules were well

6   known to them; then subsequently and intentionally break the rules and attempt to

7   counter founded wrong doing by them, ironically, with what an adversary should have

8   done, including when he or she should've righted these wrongs.

9

10      More fundamentally, relative to the defamatory statements regarding me being a

11          disgruntled and violent former employee of Blakely-Sokoloff, that was made to

12   individuals within and exterior to the company, I submit *(Popko v. Continental Casual*

13   *Co.)*, additionally, <u>to prove defamation, a plaintiff must show that the defendant made a</u>

14   <u>false statement about the plaintiff, there was an unprivileged publication to a third</u>

15   <u>party by the defendant, and the publication damaged the plaintiff.</u> *Gibson v. Philip*

16   *Morris, Inc.,* 292 Ill. App. 3d 267, 272, 685 N.E.2d 638 (1997). See also *Parker v. House*

17   *O'Lite Corp.,* 324 Ill. App. 3d 1014, 1020, 756 N.E.2d 286 (2001); *Cianci v. Pettibone Corp.,*

18   298 Ill. App. 3d 419, 424, 698 N.E.2d 674 (1998). Thus, publication is an essential element

19   to a cause of action for defamation. <u>Gibson</u>, 292 Ill. App. 3d at 275; *Beauvoir v. Rush-*

20   *Presbyterian-St. Luke's Medical Center,* 137 Ill. App. 3d 294, 300, 484 N.E.2d 841 (1985).

Plaintiff: Harris Winns (Pro Per)                          Harris Winns v. BSTZ

The communication of interoffice reports within a corporation has previously been

determined to constitute a publication for defamation purposes. <u>Gibson</u>, 292 Ill. App. 3d

at 276; see *also Jones v. Britt Airways, Inc.,*

It appears that the Defendants are under the false and incorrect assumption that I

should've filed my complaint and the court system would've graciously served the

papers free of charge on the Defendants, on my behalf. This would've been an

unprecedented move by the court, to say the least.

Additionally, I could care less about the fact if an attorney was duly licensed to practice

before all the Courts within the contiguous United States including the US territories,

much less about having the right to do so within California alone. You, and the

Declarants that you represent, will be soundly defeated.

Furthermore, it appears that the collective Defendants are approaching this case with an

abundance of trepidation, due to this case primarily revolving around what I've termed

a <u>difficult truth</u> that they've yet to come to terms with from an individual or collective

stand point.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1    I declare under penalty of perjury under the laws of the State of California the foregoing

2    is true and correct. Executed on this 22nd day of February, 2008 in San Jose, California.

3

4

5                        **Judge Lucero, Tenth Circuit Judge**
6                        *(Alexander v. State Of Oklahoma)*
7                        *Exceptional Circumstances*

8

9

10   We have previously concluded that exceptional circumstances may justify equitable

11   tolling of a statute of limitations. See, e.g., *(Van Tu v. Koster)*, 364 F.3d 1196, 1199-1200

12
13   (10th Cir. 2004). Generally, courts have tolled the statute of limitation when plaintiffs'

14   failure to file their claims within the statutory period is excused by the defendant's

15   misconduct. See *(Hilao v. Estate of Marcos)*, 103 F.3d 767 (9th Cir. 1996) (holding that fear
16
17   of reprisal was extraordinary circumstance justifying equitable tolling on Philippine

18   nationals' claims against the Estate of Fedinand Marcos for injuries arising from torture

19
20   and summary execution); *(Hobson v. Wilson)*, 737 F.2d 1, 37 (D.C. Cir. 1984) (tolling

21   statute because the FBI's concealment of its COINTELPRO activities blinded plaintiffs

22
23   to their potential cause of action); *(Rosner v. United States)*, 231 F.Supp. 2d 1202 (S.D. Fla.

24   2002) (taking as true plaintiffs' allegations that the United States wrongfully claimed

25   that property it seized from the Nazis taken from Hungarian Jews was unidentifiable

26
27   and unreturnable, the court equitably tolled the statute); *(Thompson v. Metropolitan Life*

28   *Ins. Co.)*, 149 F. Supp. 2d 38 (S.D.N.Y. 2001) (tolling statute on African-American

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

plaintiffs claims against defendant insurance companies for pattern of intentional

discrimination in sales of insurance policies from the late 1800s through the 1970s);

(Bodner v. Banque Paribas), 114 F. Supp. 2d 117, 136 (E.D.N.Y. 2000) (finding on claims by

Jewish plaintiffs against various banks seeking restitution of money and property that

"[t]here is no reason that plaintiffs should be denied a forum for addressing their claims

as a result of deceitful practices by the defendants which have kept them from knowing

or proving the extent of these claims").


Our decision in Van Tu implies that on a motion to dismiss based on the statute of

limitations, the district court must determine with reference to the facts before it,

construed in the light most favorable to the plaintiffs, whether the exceptional

circumstances justifying the tolling of the statute of limitations persisted long enough to

render the complaint timely filed. Of course, if there is a dispute of facts on the point,

such fact determinations should be made by a jury, not by the court or the panel.

(Redwine v. Baptist Med. Ctr of Okla.), Inc., 679 P.2d 1293, 1295 (Okla. 1983) ("the

beginning of the running of the statute of limitations is usually to be determined from

the facts and circumstances of the particular case; and, where these are such that

reasonable men might reach conflicting opinions thereon, the issue is a question for

determination by the trier of the facts").

Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

I respectfully present this case before the United States District Court of Northern

California's San Jose Division in order to settle a federal question since Santa Clara

County's Superior relieve themselves of doing so by claiming to not have jurisdiction to

settle the constitutionality elements herein.


## Res Judicata

As a preemptive strike at those who may raise *Res Judicata* as a defense, I submit U.S.

Supreme Court Justice Potter Stewart, who stated it better than anyone: "The federal

courts have traditionally adhered to the related doctrines of res judicata [claim

preclusion] and collateral estoppel [issue preclusion].  Under res judicata, a final

judgment on the merits of an action precludes the parties or their privies from

relitigating issues that were or could have been raised in that action. Under collateral

estoppel, once a court has decided an issue of fact or law ncessary to its judgment, that

decision may preclude relitigation of the issue in a suit on a different cause of action

involving a party to the first case. As this Court and other courts have often recognized,

res judicata and collateral estoppel relieve parties of the costs and vexation of multiple

lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage

reliance on adjudication. Allen v. McCurry, 449 U.S. at 94. The collateral estoppel bar is

inapplicable when the claimant did not have a "full and fair opportunity to litigate" the

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

issue decided by the state court. Id. at 101. Thus, a claimant can file a federal suit to

challenge the adequacy of state procedures.


Additionally, end even more perplexing, is that when my case was supposedly

dismissed by the presiding judge on March 21st, 2008 at Santa Clara County, I never

received an official order that came directly from the court. All of my notifications

regarding my case being dismissed came from the Defendants' attorneys on two or

three separate occasions. In fact, the first notification given to me by a courthouse clerk

while I was in the process of filing an amended complaint on the 25th of March. This is

almost a week after my case was supposedly dismissed and not even a single hard copy

of the dismissal could be found any where in the entire court house. This quite strange,

to say the least. The clerk excused himself on two separate occasions in a futile attempt

to locate a hard copy of the order supposedly written by the presiding judge, dismissing

my case. Furthermore, and puzzling as well, was that the orders that was sent to me via

mail service was absent the judge's signature as it was with previous documents

coming from the courthouse. The orders mailed to me from the opposition that

indicated my case was dismissed, were noticeably stamped with the judge's name.

Parenthetically, I respectfully ask that the Federal Court system at San Jose assess and

draw its own conclusion regarding the validity and fairness of these procedures

committed at the State level. No man, who merely seeks justice, should have to endure

Plaintiff: Harris Winns (Pro Per)                                          Harris Winns v. BSTZ

the pain and suffering, trials and tribulations nor the suffocating impacts that my family

and I have had intentionally inflicted upon us over the past 6-7 years. To allow these

things to happen to any man and his family with impunity is surely an indictment of,

and in my opinion, a blight on the record of the judicial system as well.


## Statement Regarding
## Complaint Clarification


I have no doubt that they'll be those who cry foul due to clarification of my complaint.

In no manner, shape or form should merely clarifying a complaint be misconstrued as

adding new claims. Clarification should not be misinterpreted as such due to what has

happened to my family and I have long ago solidified in concrete. It cannot be altered

by the opposition by merely stating that the correct legal term wasn't utilized, therefore,

yours truly must somehow be penalized for this. Just because the correct term wasn't

utilized, it does not stir, diminish, refute, detract, disassemble or deterritorialize the

merits of my claims herein.


If a rape victim was to report that to the local authorities that her home was burglarized

while she and her toddlers hid in a back room closet of their home. Later, while being

questioned by the authorities, she gave the Investigators a full account of what

happened, or so they thought. An hour after the local police departed her home, she

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1   telephoned the lead Investigator after being encouraged to do so by family members

2   and told her (the Investigator) that she was also raped. Accordingly, the Investigator

3   returned to the woman's home with appropriate personnel and took the necessary steps

4   

5   to ascertain crucial forensic evidence that was still present on/in the victim.

6   Subsequently, forensic evidence was recovered and a search of a national DNA

7   database  found a highly possible match of who the suspect may be. Again, just because

8   the victim clarified her claims, does not in any manner de-legitimize or detract from her

9   story. Indeed, it's highly unlikely that the Investigator will tell her (the victim) that she's

10  

11  does not believe her story due to her failing to inform the authorities of what really

12  happened at the initial outset of the investigation. The same thing applies here; mere

13  

14  clarification of one's story should not be misconstrued as something less than the truth

15  or carries less weight in terms of the truth. Additionally, just because rape is more

16  

17  stigmatized in some cultures than others; and the victim failed to mention or utilized

18  the correct vernacular at the initial investigative inquiry, it should not be negatively

19  

20  looked upon by Investigators as a claim by the victim that lacks merit. Here, as it is in

21  my case as well, the facts are available, irrefutable and irreducible to being forged

22  

23  around the contours of a mere choice of words if one chooses to clarify himself.

24  

25  

26  In fact, I utilized the word "LIES" liberally throughout my complaint. There is no

27  difference between what I term as a <u>LIE</u> than it is for the Declarants to act without

28

probable cause. At bottom, for the seasoned Defendants to foolishly act upon

questionable or unmeritorious claims by Blakely-Sokoloff in the first instance, is one

and the same as a LIE. The last time that I checked, probable cause basically means in

essence that there was enough preliminary or physical trace evidence discovered at the

crime scene for the Investigators to believe that a crime had in fact occurred and

committed by a particular person or group. Here, evidence in any form is totally absent.

Therefore, it's all the more perplexing for me as to why Defendant attorneys Garrity

and Innes acted upon these empty claims enunciated by Blakely-Sokoloff. Here, what

appears to be truncated and separate acts, is in fact, a well choreographed act between

Investigator Charles Wall, Defendant attorney Garrity and Innes, and Blakely-Sokoloff

is essentially a conspiracy that has robbed me of peace, rest and quiet that were the

elements of a once tranquil life that I had, in addition to besmirching my good character

and my good name..

## Motion – To Vacate Dismissal Order
### Request for relief under C.C.P. § 473b and CRC § 3.1206

Your Honor, here comes the Pro Per Plaintiff, Harris L. Winns. I respectfully motion

that this Honorable Court vacate the order of dismissal with Prejudice entered in this

action on March 21st, 2008. This dismissal is contrary to Code of Civil Procedure sections

437 and California Rules of Court 3.1206.

Plaintiff: Harris Winns (Pro Per)

# POINTS AND AUTHORITIES IN SUPPORT OF MOTION
## Argument

Section 473(b) states in part that: The court may, upon any terms as may be just, relieve

a party or his or her legal representative from a judgment, dismissal, order, or other

proceeding taken against him or her through his or her mistake, inadvertence, surprise,

or excusable neglect. Application for this relief shall be accompanied by a copy of the

answer or other pleading proposed to be filed therein, otherwise the application shall

not be granted, and shall be made within a reasonable time, in no case exceeding six

months, after the judgment, dismissal, order, or proceeding was taken. However, in the

case of a judgment, dismissal, order, or other proceeding determining the ownership or

right to possession of real or personal property, without extending the six-month

period, when a notice in writing is personally served within the State of California both

upon the party against whom the judgment, dismissal, order, or other proceeding has

been taken, and upon his or her attorney of record, if any, notifying that party and his

or her attorney of record, if any, that the order, judgment, dismissal, or other

proceeding was taken against him or her and that any rights the party has to apply for

relief under the provisions of Section 473 of the Code of Civil Procedure shall expire 90

days after service of the notice, then the application shall be made within 90 days after service of the notice upon the defaulting party or his or her attorney of record, if any, whichever service shall be later.

Furthermore, (c) (1) Whenever the court grants relief from a default, default judgment, or dismissal based on any of the provisions of this section, the court may do any of the following:

(A) Impose a penalty of no greater than one thousand dollars ($1,000) upon an offending attorney or party.

(B) Direct that an offending attorney pay an amount no greater than one thousand dollars ($1,000) to the State Bar Client Security Fund.

(C) Grant other relief as is appropriate.

(2) However, where the court grants relief from a default or default judgment pursuant to this section based upon the affidavit of the defaulting party's attorney attesting to the attorney's mistake, inadvertence, surprise, or neglect, the relief shall not be made conditional upon the attorney's payment of compensatory legal fees or costs or monetary penalties imposed by the court or upon compliance with other sanctions ordered by the court.

(d) The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order.

As conventionally understood and as noted by the court in *Amaro v. California Unemployment Insurance Appeals Board* (1977), 65 Cal App 3d 715, 135 Cal Rptr 493, the concepts of mistake, inadvertence, surprise and excusable neglect are taken generally from section 473 of the Code of Civil Procedure (hereafter C.C.P 473). Section 473 provides in part that a court may relieve a party from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect.

(*Shearman v. Jorgensen*, 106 Cal. 483, 485 [39 P. 863].) The 'surprise' referred to in section 473 is defined to be some 'condition or situation in which a party to a cause is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against.'

(*Miller v. Lee*, 52 Cal App 2d 10, 16 [125 P.2d 627].) The 'excusable neglect' referred to in the section is that neglect which might have been the act of a reasonably prudent person under the same circumstances.

(*Hewins* v. *Walbeck*, 60 Cal.App.2d 603, 611 [141 P.2d 241].)  A party will not be relieved from his default unless he shows he acted in good faith and that his mistake, inadvertence, surprise or excusable neglect was the actual cause.

Additionally, the provisions of CRC § 3.1206 explicitly states that: Parties appearing at the ex parte hearing must serve the ex parte application or any written opposition on all other parties at the first reasonable opportunity. Absent exceptional circumstances, no hearing may be conducted unless such service has been made.

I was never served with any documents in relation to the ex parte application for dismissal of my complaint by the opposing attorneys. This act is in stark contrast with what's outlined in the CRC indicated immediately above.

Although I'm not certain, it appears that some individuals are partly influenced by a faulty assumption that mechanical rules are always in an indelible and therefore superior position in relation to one who merely seeks justice. In fact, it's just the opposite, justice not only eschews mechanical rules, it soundly trumps these rules at each and every turn.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

Additionally, I respectfully request that the presiding judge vigorously impose sanction

where it's applicable against the offending attorney(s) involved in this matter.

# CONTINUUM

Your Honor, I vehemently oppose Blakely-Sokoloff's, in particular Laura E. Innes and

Ronald F. Garrity's attempt to strike my complaint under a Special Motion. These

Declarants, they may have had and still do so to this day, that is, to defend whom ever

they may deem worthy of their defense in court, however, they do not have a right to

maliciously prosecute or abuse the judicial process against me or anyone else while in

the process of choosing whom to defend in addition to intentionally failing to

corroborate Blakely-Sokoloff's claims in the first instance. To my knowledge, this was

an uncoerced act by Defendant attorneys Garrity and Innes. Additionally, if this act was

coerced upon them by Blakely-Sokoloff, they should've reported this coercion to the

proper authorities. They've had over (6) years to report this. They did not have to

accept Blakely-Sokoloff's claims. Therefore, they must suffer the consequences and let

the chips fall where they may. At bottom, the Defendants behave as if I should bare the

burden of their failures and inadequate assessment of Blakely-Sokoloff's claims. In my

opinion, these are the acts of what I would expect from incompetent attorneys that were

ultimately deemed unfit to practice law in any State within the union. I sincerely do not

believe that Defendants Garrity and Innes are incompetent attorneys. They are educated

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1    in the trade of law; apparently they have studied the law; apparently they have taken

2    additional training courses regarding law; without a doubt, they have practiced law

3

4    within the State of California. Therefore, I do not...... and will not accept their defense

5    as that of two individuals not having the faculties of knowing the law and what the

6

7    ending results would be if two attorneys were to fail to assess claims by a potential

8    client and subsequently have a restraining order wrongfully placed upon another

9

10   individual in an attempt to conceal a wrongful termination *(ulterior motive)*, financial

11   ruin and defamation, *inter alia*, and then attempt to extract themselves from a long

12   awaited, but pursuing suit. This is the blatant face of conspiracy, in addition to what

13

14   appear to be hubristic attitudes in motion all at once.

15

16   However, whether or not Defendant Garrity and Innes are incompetent attorneys is

17

18   properly a question for a prescription writing Psychiatrist or a behavioral studying

19   Psychologist to determine via appropriate protocols.

20

21

22                    **POINTS AND AUTHORITIES IN SUPPORT**

23                    **OF DENYING SPECIAL MOTION TO STRIKE**

24

25

26   Now, Defendants have filed an anti-SLAPP suit CCP§425.16, in an attempt to have my

27   suit dismissed. However, I do believe that Defendant attorneys Garrity and Innes did

28

                                           54
                    Section 1981 / Deprivation Of Employment / Title VII

Plaintiff: Harris Winns (Pro Per)                                Harris Winns v. BSTZ

have a right to petition on behalf of Blakely-Sokoloff but, this right alone should not

absolve them of a malicious prosecution claim against them. Apparently, they were

negligent in screening the validity of a potential client's claims prior to accepting them;

they've failed to enumerate and ascertain facts that would've been supportive of

Blakely-Sokoloff's claims as well. The Defendants should've paused for a period of time

and ponder the following questions; preferably, prior to making the decision to

represent them: why didn't the Investigator that Blakely-Sokoloff hired to conduct

surveillance of their property, failed to contact the local authorities when he claimed he

saw yours truly on the former employer's property, after being terminated, on (6)

separate occasions; why don't Blakely-Sokoloff present to us something that will give us

probable cause against yours truly?


Parenthetically, I'd like to add that this all supposedly took place at 2am, there or about

that time on (6) separate occasions, in the early morning in the midst of darkness but

yet, Defendant Investigator Charles Wall had the audacity to state within his support

for ex-parte application that he saw no one else but me, attempting to break into one of

the buildings on the premises presumably owned by my former employer. I could

assure you, that at that specific time of the morning, or any other time, I more than

likely was enjoying the comfort of my wife. It's unfortunate that he wasn't doing the

same thing. These allegations are quite perplexing, to say the least. In fact, if I was

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1   unfortunately a member of Blakely-Sokoloff's management team, I'd demand that

2   Defendant Investigator Charles Wall return every penny given to him in relation to

3   declaring that he'd facilitate security surveillance and subsequently, due to him failing

4   to provide the services that he promised, that was, to act accordingly if the security of

5   the premises was ever violated.

6

7

8

9   If the Defendants had in place a screening process whereby potential clients are at least

10  rigorously screened prior to accepting their claims at face value and apparently without

11  scrutiny, Defendants Garrity and Innes probably wouldn't be in the situation in which

12  they currently find themselves. But yet, after failing to take simple precautions

13  enunciated above, it appears that they've embarked upon a campaign that in my

14  opinion, equates with that of having an abundance of umbrage targeting me. The

15  Declarants should target their former client Blakely-Sokoloff with this umbrage. The

16  Defendants never represented me and I've never supplied them with a false claim nor

17  have I presented to them a mangled theory. Therefore, it appears to be a fundamental

18  misunderstanding in addition to misdirected anger regarding what happened here,

19  when it shouldn't be, due to their complicity in bringing about a malicious TRO that has

20  essentially ruined my life.

Plaintiff: Harris Winns (Pro Per)                    Harris Winns v. BSTZ

Defendant attorneys Garrity and Innes or any other firm for that matter, would greatly

reduce their exposure to becoming targets of malicious prosecution claims in the first

instance if they'd institute rigid screening guidelines.


In fact, in order to establish a cause of action for malicious prosecution, the plaintiff

must prove the prior action was:  <u>(1) brought by the defendant and resulted in a</u>

<u>favorable termination for the plaintiff; (2) initiated or continued without probable cause;</u>

<u>and (3) initiated with malice.</u>  (*Bertero [v. National General* (1974) 13 Cal.3d 43,] 50, 118

Cal.Rptr. 184, 529 P.2d 608 [(*Bertero* )]." (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676, 34

Cal.Rptr.2d 386, 881 P.2d 1083 (*Crowley* ).


The tort of malicious prosecution is disfavored both because of its 'potential to impose

an undue "chilling effect" on the ordinary citizen's willingness to report criminal

conduct or to bring a civil dispute to court' [(*Sheldon Appel Co. v. Albert Oliker* (1989) 47

Cal.3d 863, 872, 254 Cal.Rptr. 336, 765 P.2d 498 (*Sheldon Appel Co.*)])


Additionally, the elements of a civil action for <u>abuse of process</u> are: 1) an ulterior motive

in using the process, and 2) a willful act in the use of the process not proper in the

regular conduct of the proceeding. *Cantu v. Resolution Trust Proce*eding (1992) 4

Cal.App.4th 857, (*Spellens v. Spellens*, 49 Cal.2d 210, at page 230.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

Moreover, Available grounds for punitive damages are malice and oppression under

California Civil Code section 3294

In direct relation to their actions, I'm in financial ruin and I've suffered intentional

infliction of emotional distress, *inter alia*. I could prove each and every one of these trier

of causes with the greatest of ease and in addition to the Defendants negligent reliance

upon fraudulent information from Blakely-Sokoloff in order to obtain the TRO in the

first proceedings *(then Plaintiffs Blakely-Sokoloff, that was awarded the TRO)* against me

and what seasoned and competent attorneys, as is the situation with Garrity and Innes,

should've at least further questioned. Therefore, the special motion to strike my

complaint must ultimately fail because it rests squarely upon the shoulders of

fraudulent and a gross misrepresentation of the truth regarding the information

provided to them by Blakely-Sokoloff and subsequently provided to the court in the

first instance. I do not believe Defendants were under any obligation to accept these

claims as stated by Blakely-Sokoloff.

If the court finds such a showing has been made, it then determines whether the

plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises*

*v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) An anti-SLAPP motion must be denied

1  " 'if the plaintiff presents evidence establishing a prima facie case which, if believed by

2  the trier of fact, will result in a judgment for the plaintiff. [Citation.]' " (*Fleishman v.*

3  *Superior Court* (2002) 102 Cal.App.4th 350, 356.)  Only a minimal showing of merit is

4  required. (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298.)

5

6

7

8  In fact, It's my understanding that the Sixth District Court of Appeal held in *Siam v.*

9  *Kizilbash* (2005) 130 Cal.App.4th 1563 (*Siam*) that a cause of action for malicious

10

11  prosecution cannot be predicated upon an unsuccessful civil harassment petition under

12  section 527.6.[7] The defendant in *Siam* obtained a TRO upon an alleged

13  misrepresentation to the court, but the court ultimately denied his request for a

14

15  permanent injunction and dissolved the TRO.

16

17

18  Furthermore, California's 4th App. Dist. vividly observed in (*Siam v. Kizilbash, 2005*) that,

19  "Permitting a malicious prosecution claim to follow an unsuccessful section 527.6

20  petition," the court observed, "would frustrate this streamlined procedure". However,

21

22  in my situation, a successful TRO was obtained and firmly held in place for (5) years

23  based on unscreened and apparently uninvestigated claims by Blakely-Sokoloff and

24

25  then presented to Defendants attorneys, Garrity and Innes and then subsequently, they

26  provided this false information to the court on behalf of Blakely-Sokoloff without taking

27

28  in to consideration the first requirement of *probable cause*.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

In sum, this entire incident was fraudulent concealment, deceitful and a conspiratorial

joint venture by Declarants Blakely-Sokoloff, attorneys Innes and Garrity and so-called

Investigator Charles Wall placed in motion by them to destroy me mainly due to my

immutable characteristics and in addition to what appear to be their beliefs that I'd

never mount a defense of my own to confront each and every one of them.

Although I'm not certain but, it appears that some individuals believe that by merely

insulting their own intelligence level via a shoddy screening process, that this is by the

means through which they should be extracted from a malicious prosecution and abuse

of process suit filed against them. <u>If this type of unchecked behavior is allowed, the</u>

<u>court will have introduced not only a ground swell of uncertainty into the legal system</u>

<u>but, this will further open the flood gates for even more anti-SLAPP suits. California's</u>

<u>CCP §425.16 is of limited authority, it is not absolute.</u>

## Abuse Of Process

One who uses legal process, whether criminal or civil, against another to accomplish a

purpose for which it is not designed is liable to the other for the pecuniary loss caused

thereby.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section.

Dean Prosser, University of California School of Law, has the following to say with the citation of many authorities: "The action for malicious prosecution, whether it be permitted for criminal or civil proceedings, has failed to provide a remedy for a group of cases in which legal procedure has been set in motion in proper form, with probable cause, and even with ultimate success, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed. In such cases a tort action has been developed for what is called abuse of process. ...

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed

to accomplish. <u>The purpose for which the process is used, once it is issued, is the only</u>

<u>thing of importance. Consequently in an action for abuse of process it is unnecessary for</u>

<u>the plaintiff to prove that the proceeding has terminated in his favor, or that it was</u>

<u>obtained without probable cause or in the course of a proceeding begun without</u>

<u>probable cause. ...</u>

"The essential elements of abuse of process, as the tort has developed, have been stated

to be: first, an ulterior purpose, and second, a willful act in the use of the process not

proper in the regular conduct of the proceeding. Some definite act or threat not

authorized by the process, or aimed at an objective not legitimate in the use of the

process, is required; and there is no liability where the defendant has done nothing

more than carry out the process to its authorized conclusion, even though with bad

intentions. The improper purpose usually takes the form of coercion to obtain a

collateral advantage, not properly involved in the proceeding itself, such as the

surrender of property or the payment of money, by the use of the process as a threat or

a club. There is, in other words, a form of extortion, and it is what is done **[49 Cal.2d**

**233]** in the course of negotiation, rather than the issuance or any formal use of the

process itself, which constitutes the tort." (Emphasis added; Prosser on Torts, (2d ed.) p.

667.) This case falls squarely within these rules. [16] The compensatory damages

recoverable for abuse of process include mental suffering. (Adelman v. Rosenbaum, 133

Pa.Super. 386 [3 A.2d 15]; Saliem v. Glovsky, 132 Me. 402 [172 A. 4]; 1 Am.Jur., Abuse of

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

1  Process, § 38.) Lamb v. National Surety Co., 108 Cal.App. 297 [291 P. 647], is clearly

2  distinguishable in that it did not involve the facts here present.

3

4  **California Civil Code Section 3294**

5

6  (a) In an action for the breach of an obligation not arising from contract, where it is

7  proven by clear and convincing evidence that the defendant has been guilty of

8  oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may

9  recover damages for the sake of example and by way of punishing the defendant.

10  The gist of my suit, and through no fault of my own, why should my family and I have

11  to bare the burden of my former employer's claims regarding yours truly; a subsequent

12

13  shoddy screening process by Defendant's Garrity and Innes which resulted in (5) years

14

15  of being unemployable; and who may possibly attempt to maliciously prosecute me

16

17  again if the Special Motion To strike is granted?

18

19

20  Again, I vehemently oppose granting the opposition's Special Motion to Strike my

21  complaint.

22

23  I declare under penalty of perjury under the laws of the State of California the foregoing

24  is true and correct. Executed on this 24th day of April, 2008 in San Jose, California.

25

26

27

28

Plaintiff: Harris Winns (Pro Per)                                        Harris Winns v. BSTZ

## USC Section § 1985 (3). Conspiracy to interfere with civil rights
### Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.


## The Armor of GOD
### Ephesians (10-18)


Finally, be strong in the Lord and in his mighty power. Put on the full armor of GOD so that you can take your stand against the devil's schemes. Therefore, put on the full

armor of GOD, so that when the day of evil comes, you may be able to stand your

ground. Stand firm then, with the belt of truth buckled around your waist, with the

breastplate of righteousness in place and with your feet fitted with the readiness that

comes from the gospel of peace. In addition to all this, take up the shield of faith with

which you can extinguish all the flaming arrows of the evil one.


For you were once darkness, but now you are light in the Lord. Have nothing to do

with the fruitless deeds of darkness, but rather, expose them. (Ephesians 8-11)


- The master warrior knows the psychology and mechanics of conflict so intimately that every move of an opponent is seen through at once. *(Sun Tzu, The Art of War)*

- To sin by silence when they should protest, makes cowards of men. *–Abraham Lincoln*

- The polemicist, on the other hand, consists of not recognizing this person as a subject having the right to speak but abolishing him as an interlocutor, from any possible dialogue and complete domination; and his final objective will be not to come as close as possible to a difficult truth but, to bring about the triumph of the just cause he has been manifestly upholding from the beginning. The polemicist relies on a legitimacy that his adversary is by definition denied – *Michael Foucault, French philosopher, social critic.*

- The essence of a defamation claim is the right to protect one's good name. This tort reflects no more than our basic concept of the essential dignity and worth of every human being, a concept at the root of any decent system of ordered liberty – *Former US Supreme Court Justice Potter Stewart, (Rosenblatt v. Baer).*

- Where a person's good name, reputation, honor or integrity is at stake, notice and an opportunity to be heard are essential. - *Former US Supreme Court Justice Potter Stewart, (Wisconsin v. Constantineau)*

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

**WHEREFORE**, plaintiff prays that the Court grant the following relief:

1. Demand that defendant(s) restore Plaintiff to the upright position that he would
   have been in but for their intentional discriminatory conduct.

2. Enjoin the Defendants, their officers, employees, and agents, and all other persons
   in active concert or participation with any of them, from participating in racial
   discrimination and harassment relative to employment practices.

3. Require the Defendant to provide sufficient equitable relief to make whole the
   charging party for the losses he has suffered as a result of the discrimination
   against him as alleged in this complaint.

4. Award back pay, compensatory and punitive damages and any other relief that
   the court may deem appropriate to the Plaintiff as would fully compensate him
   and his family for their injuries caused by the discrimination against him as
   alleged in this complaint, pursuant to and within the statutory limitations of
   Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

5. Require the Defendant to take appropriate measures to ensure that individuals are
   not subjected to discrimination in the terms, conditions and privileges of
   employment, non-renewal of contracts, or discharge on the basis of race or
   national origin or retaliated against for complaining about what they reasonably
   believe to be discrimination prohibited by Title VII.

6. Additionally, Plaintiff prays for further relief as justice may require, up to and
   including attorney and court costs.

Plaintiff: Harris Winns (Pro Per)                                    Harris Winns v. BSTZ

7. Enjoin the defendant from engaging in and participating in acts that involves placing my name in electronic databases that stigmatizes my character in addition to essentially barring me from fully participating in the job market by incorrectly and intentionally attaching a criminal element to my name for the past five years.

8. I pray that the court would facilitate me an opportunity to confront and hold those accountable for their actions and inactions relative to suffocating the hopes and dreams of my family and I through electronic means, third party and fourth party in addition to any other means through which their unlawful acts were perpetrated.

## Jury Demand

In accordance with explicitly expressed language within Article I, section 16 of the California constitution and in addition to all issues so triable and pursuant Rule 38 of the Federal Rules of Civil Procedure, I demand that a jury be convened to decide this case.

DATED: May 20, 2008

*Respectfully submitted*

Harris L. Winns, *In Propia Persona*

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT





**Roger W. Washington, M.D., Inc.**

885 Scott Blvd., Suite 4
Santa Clara, CA 95050
408-246-9926 office
408-246-7877 fax
www.rogerwashington.com



December 13, 2007.

Your Honor,

I aver the following as the result of the request of Harris Winns, for whom I
provided professional medical services between April of 2001 and June of 2005.
My records indicate our first encounter was initiated by Mr. Winns' request that I
attend him for a chronic musculoskeletal problem. The incidental review of his
medical systems indicated at that time the likelihood of a concomitant mood-
related disorder. Later in December of 2001, it became apparent that Mr. Winns
was suffering the symptoms precipitated by a mood-related disorder. I
diagnosed him as having clinical depression, which necessitated the initiation of
an antidepressant. He responded favorably to the medication. By July of 2002
his symptoms had remitted. Subsequently, he continued the maintenance phase
of treatment consisting of an adjusted dosage of the same medication. My
records indicate Mr. Winns was compliant and continued the proscribed one-year
treatment throughout 2002 into the first half of 2003.

Prior to 2001 Mr. Winns had no medical history of clinical depression. It is not a
part of my usual practice to attempt to determine or identify a particular cause of
depressive illness. My records do not lend themselves therefore to identifying
what some often refer to as a 'root cause'. Although I cannot aver that a stressful
work environment caused Mr. Winns' clinical depression, it is plausible in my
opinion that such circumstances can precipitate clinical depression.

Sincerely,

Roger Washington, MD, FAAFP

COPY

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT

# B

MAR. 15. 2005  9:08AM     SGI 6506154861                           NO. 570   P. 2

UCS

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|
| Ronald F. Garrity, Bar # 110488 | 650 615-4860 | FILED |

Ronald F. Garrity, Bar # 110488
Laura E. Innes, Bar # 124259
SIMPSON, GARRITY & INNES
651 GATEWAY BOULEVARD, SUITE 1050
SOUTH SAN FRANCISCO, CA  94080

**2005 MAR 15 AM 9: 53**

KIRI TORRE
CHIEF EXEC. OFFICER/CLERK
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY _____DEPUTY
Sharon Cullen

ATTORNEY FOR *(Name):*  Plaintiff, Blakely, Sokoloff, Taylor & Zafman, LLP

Insert name of court and name of judicial district and branch court, if any:

Santa Clara Superior Court

PLAINTIFF/PETITIONER: BLAKELY SOKOLOFF TAYLOR &
ZAFMAN, LLP
DEFENDANT/RESPONDENT: HARRIS WINNS

| **REQUEST FOR DISMISSAL** | CASE NUMBER: |
|---|---|
| [ ] Personal Injury, Property Damage, or Wrongful Death    *102* | CV806829 |
|    [ ] Motor Vehicle     [ ] Other | |
| [ ] Family Law | |
| [ ] Eminent Domain | |
| [X] Other *(specify):* Stipulated Order for Injunction | |

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. TO THE CLERK: Please dismiss this action as follows:

  a. (1) [ ] With prejudice    (2) [X] Without prejudice

**BY FAX**

  b. (1) [ ] Complaint    (2) [ ] Petition
     (3) [ ] Cross-complaint filed by *(name):*         on *(date):*
     (4) [ ] Cross-complaint filed by *(name):*         on *(date):*
     (5) [ ] Entire action of all parties and all causes of action
     (6) [X] Other *(specify):** Stipulated Order for Injunction

Date: March *14* , 2005         SIMPSON, GARRITY & INNES, PC.

Ronald F. Garrity, Bar # 110488
_____             (SIGNATURE)
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)  Attorney or party without attorney for: Plaintiff,
Blakely, Sokoloff, Taylor & Zafman, LLP

\* If dismissal requested is of specified parties only, of specified causes of
action only, or of specified cross-complaints only, so state and identify
the parties, causes of action, or cross-complaints to be dismissed.

[ ] Plaintiff/Petitioner      [ ] Defendant/Respondent
[ ] Cross-complainant

2. TO THE CLERK: Consent to the above dismissal is hereby given.**

Date:

_____             (SIGNATURE)
(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)  Attorney or party without attorney for:

\*\* If a cross-complaint – or Response (Family Law) seeking affirmative
relief – is on file, the attorney for cross-complainant (respondent)
must sign this consent if required by Code of Civil Procedure section
591(i) or (j).

[ ] Plaintiff/Petitioner      [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [X] Dismissal entered as requested on *(date):*   **MAR 1 5 2005**   as to only *(name):*
4. [ ] Dismissal entered on *(date):*
5. [ ] Dismissal not entered as requested for the following reasons *(specify):*

6. [X] a. Attorney or party without attorney notified on *(date):*   **MAR 1 5 2005**
    b. Attorney or party without attorney not notified. Filing party failed to provide
      [ ] a copy to conform    [ ] means to return conformed copy

                                Sharon Cullen

Date: **MAR 1 5 2005**         Clerk, by _____ , Deputy

| Form Adopted by the<br>Judicial Council of California<br>982(6)(5) [Rev. January 1. 1997]<br>Mandatory Form | **REQUEST FOR DISMISSAL** | Legal<br>Solutions<br>& Plus | Code of Civil Procedure, § 581 et seq.,<br>Cal. Rules of Court, rules 383, 1233 |

10708754.tif - 3/15/2005 9:05:22 AM

# EXHIBIT

# C

# BLAKELY SOKOLOFF TAYLOR (V ZAFMAN

### A LIMITED LIABILITY PARTNERSHIP INCLUDING LAW CORPORATIONS

TELEPHONE (408) 720-8300

FACSIMILE (408) 720-8383

BSTZ_MAIL@BSTZ.COM

WWW.BSTZ.COM

INTELLECTUAL PROPERTY LAW

279 OAKMEAD PARKWAY

SUNNYVALE, CA 94085-4040

OTHEROFFICES

AUSTIN, TX

LOS ANGELES, CA

ORANGE COUNTY/ COSTA MESA, CA

SAN DIEGO/ LA JOLLA, CA

SILICON VALLEY/SAN JOSE, CA

PORTLAND / LAKE OSWEGO, OR

SEATTLE, WA

DENVER. CO

Date:     Wednesday, February 13, 2002'!

To:        Anthony Intil

             Harris Winns

From:     Candace C. Mielke

RE:        Incident of February 13, 2002

On February 13, 2002, at approximately 10:45am, I entered the office shared by Anthony Intil and Harris Winns. After inquiring how things were going with the two of them an argument arose between Anthony and Harris. Anthony stated a negative and inappropriate comment to me regarding Harris. This comment brought about an argument between the two employees. During the argument the two employees raised their voices, used profanity treating one another in an extremely inappropriate and unprofessional manner. Both did not listen and acknowledge their supervisor's request to stop the argument and to sit down. After several requests from their supervisor to stop yelling and to sit down, both did comply.

I spoke to both of them about the department, the teamwork and the break down in the team that this argument has now caused. I told them that if they continued to argue in this manner that I would terminate both of them for improper work conduct. I also stated that their behavior is unacceptable and that 1 was extremely disappointed in their disrespect towards each other and ultimately to myself. After I spoke with the two in the room, I sent both employees home for the day. The emotions of the argument were so great that keeping them in the workplace any further would in my view exacerbate the situation greatly.

This argument is unfortunate and intolerable. I am greatly disappointed in the inappropriate behavior displayed by both employees to each other and directly to myself. The BSTZ Personnel Employee Manual, referencing section 52.0 Rules of Standards of Conduct, speaks to this type of behavior displayed by these two employees today.
This type of conduct can lead to disciplinary action up to and including immediate discharge.

This letter serves as a warning and a formal counseling to both employees, Anthony Intil and Harris Winns. There will be zero tolerance of this type of behavior in the future.

This letter is to be signed by both employees and given to supervisor, Candy Mielke

Respectfully Yours ·

Candace C. Mielke Director of Information Technology Read and Acknowledged by Harris Winns

Sign:                                                      Date:

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman



| From: | "Laura Innes" <linnes@sgilaw.com>  Add to Address Book  Add Mobile Alert |
| To: | "'Harris Winns'" <hwinns@yahoo.com> |
| Subject: | hello |
| Date: | Thu, 11 Aug 2005 09:15:31 -0700 |

Hi Mr. Winns,

I am still working on this.  Summer is a terrible time to try to find enough
people to get critical mass for decision-making.  Hang in there, I have not
forgotten you.

Laura


Laura E. Innes
Simpson, Garrity & Innes PC
601 Gateway Blvd., Suite 950
South San Francisco, CA 94080
(650) 615-4860
(650) 615-4861(fax)
linnes@sgilaw.com


***********************************
This message contains information which may be confidential and
 privileged. Unless you are the addressee (or authorized to receive for
the addressee), you may not use, copy or disclose the message or any
information contained in the message to anyone. If you have received
this message in error, please advise the sender by reply e-mail and
delete the message. If you are the intended recipient, please be
advised that the content of this message is subject to access, review
and disclosure by the sender's e-mail administrators.
***********************************

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT

# E

| From: | "Laura Innes" <linnes@sgilaw.com>  ▦Add to Address Book  🗒Add Mobile Alert |
| To: | "'Harris Winns'" <hwinns@yahoo.com> |
| CC: | "'Ron Garrity'" <rgarrity@sgilaw.com> |
| Subject: | RE: Hi Laura |
| Date: | Mon, 29 Aug 2005 14:44:57 -0700 |

Hi Harris,

I am deeply disturbed by the tone of your email and do not understand what wrongs you believe that BSTZ has committed against you. BSTZ won a restraining order against you. You were represented by legal counsel. It was your acts which lead to the firm winning that restraining order. As a courtesy to you, the restraining order was dismissed on motion by BSTZ on March 15, 2005; you received a copy of that dismissal. The order was set to expire in April 2005. There is no potential liability against BSTZ based on the consequences of that litigation.

Without knowing exactly to which records you were referring when you cited damage you are being caused by the existence of the restraining order, or from where the information was coming, we ran a court records check on Lexis, spoke with personnel at Pro E Access, inquired with the Santa Clara Sheriff's department and the DOJ regarding the California Law Enforcement Telecommunication System (CLETS) records, spoke with the Santa Clara Clerk of the Court office regarding court records and researched the code/rules regarding a procedure for removing information from the Court's public database. We learned the following:

     1.  *Court records background check.* The Lexis court records search on Harris Winns revealed that Harris Winns was the defendant in a civil action against BSTZ in Santa Clara County . The "Case Type" is described as "Other Petition." The search does not reveal that the matter was a restraining order. This should not alert potential employers to anything other than the fact that you have been involved in litigation, as have many Americans.

     2.  *Pro E Access (800-616-2900):* According to personnel at Pro E Access (a background search company) a restraining order typically does not show-up on standard background checks. Instead, restraining orders appear on the CLETS which may only be accessed by law enforcement, judges or if seeking a government job.

3. *Santa Clara County Sheriff's Office – Civil Restraining Orders*. We spoke with the Santa Clara County Sheriff's office regarding restraining orders listed on the CLETS. They explained that restraining orders typically stay on the system for 5 years; however, after a restraining order expires it appears as "inactive." Although she could not reveal whether the restraining order against you appeared inactive or not, she did say that they were up to date on tracking restraining orders, and that if it expired in April 2005, the CLETS should show it as inactive. Again, private employers do not have access to this information.

4. *California Department of Justice – CLETS division – restraining orders*: This department provided additional and more detailed information regarding CLETS. She said that when a restraining order expires or otherwise goes away it is placed for 30 days in a "suspension mode." During the 30 day suspension mode a restraining order appears as inactive. After 30 days it is then (because of Family Code §6306) moved to a history file for 5 years where only the courts and certain law enforcement officials have access. The history file cannot be accessed for employment purposes, except for very limited circumstances/positions. The restraining order against you should have already been moved to the CLETS history file.

Harris, as you know, if BSTZ is contacted by prospective employers about an employment reference, you are given a neutral reference – dates of employment and position held. BSTZ' reference is consistent with common business practice and should not be raising any red flags. Based on our research, as outlined above, there should not be an insurmountable obstacle to employment.. The restraining order shows up as no more than civil litigation in the court databases.

We hope this clarifies these issues. Best of luck in your new area and search efforts.

Regards,

Laura

Laura E. Innes
Simpson, Garrity & Innes PC
601 Gateway Blvd., Suite 950
South San Francisco, CA 94080
(650) 615-4860
(650) 615-4861 (fax)
linnes@sgilaw.com

************************************

This message contains information which may be confidential and privileged. Unless you are the

addressee (or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message to anyone. If you have received this message in error, please advise the sender by reply e-mail and delete the message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's e-mail administrators.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

**From:** Harris Winns [mailto:hwinns@yahoo.com]
**Sent:** Monday, August 29, 2005 1:00 PM
**To:** linnes@sgilaw.com
**Subject:** Hi Laura

Good morning,

My family and I has had to relocate to Seattle/Tacoma area due to our sub-standard living arrangement and the economic pressures of the Bay Area. Therefore, my wife and I both are unemployed and are currently searching for employment that will comfortably sustain our family.

As a reminder, it's been (3 1/2) years since your client, Blakely-Sokoloff, has injured my potential to provide for my family. The nexus between the adverse actions of BSTZ and my current familial dilemma, are direct results of a few individuals at that firm. Their torturous abuse has cut away at the very ground that nurtured my family and I. The only manner in which someone or an organization could commit such an abhorrent act is to chase "reason" from the camp and have "irrationality" reside in its absence.

In deed, there is no difference and no less important it would be if someone driving an automobile were to purposefully or accidentally strike a pedestrian and leave the crime scene in an attempt to evade authorities and thereby falsely believe that he or she doesn't bare any responsibility for such an act.

The Lord is my witness that I've been very patient, if not too patient in dealing with Blakely-Sokoloff. The Lord is my witness in seeing that my family has and continues to suffer because of them. It's ironic that everyone knows why my family is hurting except the people at Blakely-Sokoloff. This is what gives the impression that this entire situation was systematic, deliberate and coldly implemented to cause injury to my family and I, culminating in mental anxiety on my person and impoverishing my family.

More fundamentally, the injuries that I've sustained will eventually be tolled at Blakely-Sokoloff's expense. The statute of limitations, with extraordinary or exceptional circumstances has always overridden time-barred defenses. Surely, the acts committed by

your client will shock the conscious of jurors. Suffice to say that this will be the outcome in this situation as well.

In any event, Blakely-Sokoloff will eventually be compelled to step forward and explain their actions before (12) people that will ultimately rule that "enough is enough" of toying around with someone's life.


Sincerely,

Harris Winns

---

Start your day with Yahoo! - make it your home page

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT

# F

# 62.0  QUESTION AND PROBLEM RESOLUTION PROCEDURE

## 62.1  PROCEDURE

A basic management philosophy of the Firm has always been to keep communication open between our employees and management. At one time or another, employees may have a question or complaint concerning their employment with the Firm. We believe a great majority of such questions or complaints can be resolved through discussion on a person-to-person basis with the people who have authority to resolve such matters. Usually a friendly talk with one's supervisor will resolve the matter. To avoid misunderstandings and to keep the lines of communication open, the following procedure for processing questions and complaints has been established:

Step One:      If an employee has a problem, talk it over first with his/her supervisor. Give him/her the whole story as he/she sees it. The supervisor has the authority to settle most employee relations questions arising in his/her area of responsibility.

Step Two:      If no solution is possible, the Office Administrator of the office in which the employee is employed and the Human Resources Department are available for any problem that has not been, or cannot be, resolved at the supervisory level.

Step Three:    If the employee is not satisfied with the solution offered by Steps One and Two above, employees are encouraged to bring the matter to the attention of the Director of Administration or a partner of the Firm whom the employee feels comfortable approaching.

Revised October 29, 1997

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman



# EXHIBIT

# G

## 52.0  RULES AND STANDARDS OF CONDUCT

For the safety and well-being of all our employees, the Firm has established rules and standards of conduct which must be followed to insure the orderly and efficient operation of our law practice. If an employee commits any material violation of any of such rules or standards of conduct, appropriate disciplinary measures will be taken. In certain circumstances, immediate termination may result. In determining the appropriate response to a violation of its rules or standards of conduct, the Firm will take into consideration such factors as the impact of the violation on the Firm, the extent of damage caused and the circumstances surrounding the violation. Disciplinary actions may include verbal reprimand, formal written reprimand, disciplinary suspension and termination. In the latter connection, we remind employees that the Firm is an employment-at-will employer, and employment can be terminated at any time with or without cause by either the Firm or the employee.

Although it is not possible to provide an exhaustive list of all types of impermissible conduct and performance, the following are some examples of behavior which are impermissible and will lead to disciplinary action up to and including immediate discharge.

1. Possession, distribution, sale, use or being under the influence of alcoholic beverages or illegal drugs while on the Firm's premises or the premises of a client, while on duty, or while operating a vehicle leased or owned by the Firm.

2. Stealing or attempting to steal the Firm's property or the property of any other employee or client of the Firm.

3. Bringing into any office of the Firm or onto the premises of any client, firearms or concealed weapons of any kind, unless lawfully permitted to do so in accordance with state and federal law.

4. Fighting, scuffling, or indulging in horseplay.

Revised October 29, 1997

5. Removing property belonging to the Firm from any office or storage facility of the Firm without approval of a supervisor or other person of authority in the Firm.

6. Intentionally destroying or damaging any property, files, records or documents belonging to the Firm or to any client of the Firm; or destroying or damaging the property of any other employee.

7. Insubordination, including improper conduct toward a supervisor or refusal to perform tasks assigned by a supervisor in the appropriate manner.

8. Intentionally falsifying (i) any material fact, by false statement or omission, in an employment application or health questionnaire; or (ii) any entry on a time sheet, billing record, or any other document required by the Firm.

9. Being the subject of excessive garnishments or other actions against the Firm's payroll (defined as two (2) or more) which involve the Firm in the demands or claims of an employee's creditors, or which may subject the Firm to the risk of possible legal actions by such creditors.

10. Failing to observe safety rules established by the Firm so as to endanger the well-being of other employees or the property of the Firm or that of its employees or clients.

11. Excessive tardiness or absenteeism, excessive socializing; or making and/or receiving excessive personal telephone calls.

12. Violating the confidentiality of any information belonging to the Firm or any of its clients by disclosing such information to persons outside the Firm, or by providing documents or files of the Firm, or copies of the same, to any outside person.

13. Threatening, intimidating, coercing, harassing, or otherwise interfering with the work of fellow employees, or indulging in excessive or malicious gossip.

Revised October 29, 1997

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT

# H



# 1.0   EQUAL EMPLOYMENT OPPORTUNITY

It is the policy of the Firm to employ, retain, promote, layoff or terminate and otherwise treat all employees and job applicants solely on the basis of merit, competency, qualifications and work performance. In other words, all employment decisions, including hiring, firing, promotions, job assignments, titles, responsibilities and compensation, are made without regard to any individual's sex, race, color, religion, national origin, ancestry, citizenship, pregnancy, age, marital status, medical condition, physical disability, mental disability, sexual orientation, or any other characteristic protected under state or federal law.

Revised October 29, 1997

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT



# I

| From: | "Laura Innes" <linnes@sgilaw.com>  📖Add to Address Book  📱Add Mobile Alert |
|---|---|
| To: | "'Harris Winns'" <hwinns@yahoo.com> |
| Subject: | RE: Hi Laura |
| Date: | Mon, 1 Aug 2005 08:36:29 -0700 |

Hi Harris,

I expect to be able to get back to you relatively quickly.

Laura


Laura E. Innes
Simpson, Garrity & Innes PC
601 Gateway Blvd., Suite 950
South San Francisco, CA 94080
(650) 615-4860
(650) 615-4861(fax)
linnes@sgilaw.com


************************************
This message contains information which may be confidential and privileged. Unless you are the addressee (or authorized to receive for the addressee), you may not use, copy or disclose the message or any information contained in the message to anyone. If you have received this message in error, please advise the sender by reply e-mail and delete the message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's e-mail administrators.

************************************

**From:** Harris Winns [mailto:hwinns@yahoo.com]
**Sent:** Friday, July 29, 2005 1:40 PM
**To:** linnes@sgilaw.com
**Subject:** Hi Laura

Good afternoon Laura,

It's been three weeks since our last correspondence. I was wondering if you've had any luck relative to the subject matter that was discussed previously?

Have a blessed weekend,

Harris Winns

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT



MEMORANDUM

TO:         Harris Winns

FROM:       Candace Mielke

DATE:       February 14, 2002

After further consideration of the events which occurred yesterday, and discussion with the management of this Firm, we have come to the unfortunate conclusion that it will not be possible for you and Anthony Intil to continue to work together in the productive and cooperative manner that is necessary for the department to function effectively. The degree of hostility and recriminations expressed in the altercation between the two of you yesterday was so serious as to permanently and irrevocably erode the atmosphere of mutual respect and trust that is important for our work team.

It was difficult for me to contemplate having to let one of you go, however, due to the seniority and level of responsibility of the other employee together with his knowledge of the network and Firm procedures, the choice is that you will be the one to leave. Therefore, effective today, February 14, 2002, we are terminating your employment with the Firm.

Today you are being given your final paycheck representing payment for your time up to and including today, a separate check for your unused vacation and sick/personal leave accrual, plus two weeks of severance pay.

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT



# K

Blakely, Sokoloff, Taylor & Zafman LLP
Performance Evaluation Form

| Employee's Name: Harris Winns | Evaluator:   Candace C Mielke |
|---|---|
| Position: Systems Support Engineer | Hire Date: |
| Period Reviewed:  Jan 01 - Dec01 | |

The scale below is to be used as a guideline for rating each of the following categories.  The scale is from 1 to 6, with 1 indicating "Unsatisfactory" performance, and 6 indicating "Exceptional" performance.  Fill in the box with the number corresponding to the rating which best represents your assessment of the employee's performance in each individual area and indicate your comments.

| 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|
| Unsatisfactory | Marginal | Acceptable | Good | Commendable | Exceptional |

Label1

**Work Quality:**     Factors include frequency of errors in work product and degree and consistency of care regarding quality of work produced.

| 5 |
|---|

Comments (indicate areas of desired growth and professional strengths):

Accomplishes task with success – takes very good notes when learning a new task thus to eliminate frequency of errors.  Is extremely resourceful, and recognizes opportunities to further work towards better work methods, demonstrates exceptional work habits

**Productivity:**     Factors include volume of work completed in a timely matter, efficient use of time, and attention to complex as well as routine tasks.

| 5 |
|---|

Comments (indicate areas of desired growth and professional strengths):

Performs work at a high achievement level and is fast and productive.  Continues to complete assigned tasks in a efficient manner.

without undue supervisory involvement.

| 6 |

Comments (indicate areas of desired growth and professional strengths):

Very reliable in attendance – punctual – willing to come into work early and/ or stay late when needed to execute and complete time critical problems and assist with office moves. Dependable and accurate in carrying out responsibilities to the best conclusion for customers. Fully accepts all responsibilities and can be relied upon to work towards schedules and deadlines. Continues to display rigid self-discipline.

## Knowledge and Skills

Factors include knowledge of job requirements and administrative procedures; diligence in following current procedures; application of knowledge and skills to job; and implementation of new procedures.

| 5 |

Comments (indicate areas of desired growth and professional strengths):

Continues to build knowledge base of new technologies. Has shown great initiative in this area.

## Initiative:

Factors include resourcefulness; working independently (within capabilities and authority), generating own systems, checklists, etc.; and seeking additional responsibility.

| 5 |

Comments (indicate areas of desired growth and professional strengths):

Harris demonstrates a good level of initiative with his projects and tasks. Displays self-reliance with learning new tasks independently. I feel Harris is ready to take on more direction within the Department

| 4 |

Comments (indicate areas of desired growth and professional strengths):

Improvements have been made in this area over the course of the year. Becoming more team oriented. I could see some more effort made in this direction but thus far, it has been a great improvement from the past.

**Communication Skills:**   Factors include written and verbal communication skills, listening skills and consideration of others' views.

| 5 |

Comments (indicate areas of desired growth and professional strengths):

Greatly improved communication over the year. Is quick to provide feedback and to communicate to end users regarding their requests. Is thoughtful in his written communications to end users to make sure the correct message is coming through and understood.

**Work Under Pressure:**   Factors include performance and efficiency when under pressure, including prioritizing tasks, meeting deadlines; and making sound judgments within the scope of capabilities and authority.

| 5 |

Comments (indicate areas of desired growth and professional strengths):

Can easily grasp and ascertain the importance and priority of requests made and is efficient in handling work thrown in his direction that is outside the norm. Gives undivided attention and handles issues professionally and with careful thought. Continue towards building confidence when handling very tricky issues..

**Planning and Organization:**  Factors include organizing work flow and work area; managing files and documents; and meeting scheduled deadlines and time estimates.

| 5 |

Comments (indicate areas of desired growth and professional strengths):

Displays an organized approach to the job – takes excellent notes  - keeps an organized desk in a disorganized area – encourage continued attention to details in all aspects of the IS department - Harris is well organized, very orderly and systematic.  Is methodical in planning and performing tasks to strive towards making deadlines and managing work-flow

**Professionalism:**  Factors include office demeanor; working relationship with others; relationship with clients; relationship with supervisor(s), and appropriateness of attire and appearance.

| 5 |

Comments (indicate areas of desired growth and professional strengths):

Very professional with end users via phone and email correspondence – performs follow up calls with end users demonstrating good customer service

**Overall Performance**

| 5 |

Comments (indicate areas of desired growth and professional strengths):

Harris has had a great year at BSTZ.  He is becoming more involved, more hands on and continues to work on new avenues of technology

## Employee's Comments

Comments

What areas would you like the Firm to improve upon and what steps would you suggest?

*Employment at Blakely, Sokoloff, Taylor & Zafman LLP is at-will. Either you or the Firm may terminate this employment relationship at any time, with or without notice, and with or without cause. The nature or status of your employment may also be altered by the Firm on an at-will basis.*

Signatures:

Evaluator: _____    Date: _____

Employee: _____    Date: _____
(Employee's signature indicates only that the employee has read the above evaluation)

Copy to: _____ Employee        _____ Personnel File

Performance Review Form 2001                                          Page 5

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT



# L

## 2.0  NO HARASSMENT

The Firm is committed to providing a productive work environment that is free from unlawful discrimination and harassment. We do not take this commitment lightly. In keeping with this objective, the Firm maintains a strict policy prohibiting unlawful harassment, including harassment based on any of the following categories: race, color, religion, sex, pregnancy, disability, medical condition, national origin, ancestry, age, sexual orientation or marital status. Inappropriate conduct based on any of these categories by the Firm or any employee that can be reasonably interpreted as creating an intimidating, offensive or hostile work environment will not be tolerated. This policy applies to all Firm agents and employees, including supervisors and non-supervisory employees.

Illegal harassment based on any of the categories listed above, or any other characteristic protected by state or federal law, is not only unlawful but also morally objectionable and is prohibited.

### 2.1  DEFINITION

In this section, special attention is paid to the prohibition of sexual harassment.

### 2.1.1 Responsibility Of Supervisors, Managers

Each supervisor and manager has a responsibility to keep the workplace free of any form of unlawful harassment. This section addresses sexual harassment in particular. No employee, including a supervisor or manager, is to threaten or insinuate, either explicitly or implicitly, that an employee's refusal or willingness to submit to sexual advances will affect the employee's terms or conditions of employment.

Revised October 29, 1997

### 2.1.2    Definition Of Sexual Harassment

Sexual harassment is defined as any unwelcome sexual advances, requests for sexual favors and other verbal, physical or visual conduct of a sexual nature which occurs under any one of three circumstances:

1. Submission is made either explicitly or implicitly a term or condition of employment;

2. Submission or rejection by an employee is used as a basis for employment decisions affecting the employee; or

3. Such conduct substantially interferes with an employee's work performance or creates an intimidating, hostile, or otherwise offensive working environment.

2.1.3 For the purpose of further clarification, sexual harassment, whether committed by supervisors, managers, non-supervisory employees, or non-employees, includes, but is not limited to:

1. Making unwelcome written, verbal, physical and/or visual contact with sexual overtones.

   a. Verbal abuse of a sexual nature. (Examples: sexually suggestive jokes, teasing or ridicule, innuendoes, etc.).

   b. Demeaning, insulting, intimidating or sexually suggestive comments about an individual's dress or body.

   c. The display in the workplace of demeaning, insulting, intimidating or sexually suggestive objects or pictures, including nude or partially nude photographs. (Examples: sexually suggestive calendars, cartoons, posters, etc.).

Revised October 29, 1997

    d.  Demeaning, insulting, intimidating or sexually suggestive written, recorded or electronically transmitted messages. (Examples: sexually suggestive or obscene letters, notes, invitations, etc.).

2.    Continuing to express sexual or romantic interest after being informed that the interest is unwelcome.

3.    Making reprisals, threats of reprisal, or implied threats of reprisal following or in anticipation of a negative response. (Examples: implying or actually withholding support for an appointment, promotion or change of assignment, or suggesting a poor performance evaluation report will be prepared).

4.    Engaging in implicit or explicit coercive sexual behavior which is used to control, influence or affect the career, salary and/or work environment of another employee.

5.    Offering favors of employment benefits, such as promotions, favorable performance evaluations, favorable assigned duties or shifts, recommendations, reclassifications, etc., in exchange for sexual favors.

Any of the above conduct, or other offensive conduct, directed at individuals because of their race, color, age or any other characteristic protected by state or federal law is also prohibited.

## 2.2 COMPLAINT PROCEDURE

### 2.2.1 Employee Relations Committee

The Firm has established an Employee Relations Committee to be responsible for receiving, investigating and resolving to the extent possible complaints relating to violations of this No Harassment Policy. The Firm-designated

Revised October 29, 1997

members of the Employee Relations committee are listed in Appendix A of this Manual.

2.2.2    Any employee who believes that the actions or words of a coworker, supervisor, agent of the Firm, or any individual doing business with the Firm, may constitute a deviation from this policy should immediately report such deviation to any member of the Employee Relations Committee. Such employees should not fear any reprisal. Reports to the Employee Relations Committee may be done on an informal basis and discussions will be held in confidence to the extent reasonably possible. When it is believed to be in the best interest of the employee(s) involved and/or the Firm, the Committee member receiving the complaint shall promptly notify the other members of the Committee. If any member of the Committee is unavailable, the Committee will proceed without him or her. Employees, supervisors, and/or managers who become aware of any deviation from this policy must immediately advise a member of the Employee Relations Committee. In this way, the Firm can ensure that immediate and appropriate action is taken.

2.2.3    After a complaint is received, an internal investigation by the Employee Relations Committee will be undertaken immediately. The investigation will be conducted in as impartial and confidential a manner as possible. Employees are required to cooperate in any investigation. A timely resolution of each complaint should be reached and communicated to the parties involved. Retaliation against any employee for filing a complaint or for participating in an investigation is strictly prohibited.

Revised October 29, 1997

2.2.4     Any employee, supervisor or manager who is found to have violated this policy will be subject to appropriate disciplinary action, up to and including termination. The Firm prohibits any form of retaliation against employees for bringing complaints or providing information about harassment. However, if an investigation of a complaint shows that the complaint or information was intentionally false, the individual who provided such false information will be subject to disciplinary action, up to and including termination.

2.2.5     This policy does not alter the employment-at-will relationship in any way.

2.2.6     Legal remedies and complaint procedures related to sexual harassment are also available through the Department of the Equal Employment Opportunity Commission and the Department of Fair Employment and Housing. These procedures and information on how to contact both agencies are explained in the brochures entitled "Sexual Harassment Hurts Everyone" and "Sexual Harassment Is Forbidden By Law." These brochures have been provided to each employee and are required reading. Review them carefully and become familiar with their provisions.

Revised October 29, 1997

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT



EEOC Form 161-B (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To: **Harris Winns**
**2610 Sierra Vista Court**
**San Jose, CA 95116**

From: **San Jose Local Office**
**96 North Third Street, Suite 200**
**San Jose, CA 95112**

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 556-2007-00848 | Juan C. Vaca, Investigator | (408) 291-4236 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

August 17, 2007

Hea Jung Atkins,
Local Office Director

(Date Mailed)

Enclosures(s)

cc: **BLAKELY, SOKOLOFF, TAYLOR & ZAFMAN, LLP**
Director of Human Resources
1279 Oakmead Pkwy.
Sunnyvale, CA 94086

Enclosure with EEOC
Form 161-B (3/98)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/00 to 12/1/00, you should file suit **before 7/1/02 --** *not* 12/1/02 -- in order to recover unpaid wages due for July 2000. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Harris Winns v. Blakely, Sokoloff, Taylor & Zafman

# EXHIBIT



N

**From:**   "Laura E. Innes" <linnes@sgilaw.com>   🖼Add to Address Book   📱Add Mobile Alert

**To:**   "Harris Winns" <hwinns@yahoo.com>

**Subject:**   RE: Hi Laura

**Date:**   Wed, 22 Jun 2005 15:20:21 -0700

Hello Mr. Winns,

From your explanation below, it appears that you are no longer represented by Ms. Whitaker (or any other lawyer).  If you are represented by legal counsel, please let me know, in that event, I cannot communicate with you directly, but must communicate through your attorney -- this is an ethical rule we must follow.

I am forwarding your email to BSTZ to discuss the issue with the firm.  I will endeavor to get back to you within the next week or so.  That is not a "hard and fast" date for a response -- I do not know if folks are out on vacations right now -- it's that time of year.  I may need to wait for folks to get back, etc.

Regards,

Laura Innes
-----Original Message-----
**From:** Harris Winns [mailto:hwinns@yahoo.com]
**Sent:** Wednesday, June 22, 2005 1:52 PM
**To:** linnes@sgilaw.com
**Subject:** Hi Laura

Hi Laura,

I was the defendant in a restraining order/alleged harassment case against Blakely, Sokoloff, Taylor & Zafman, (#CV806829) in April of 2002. Shortly after the judge made her decision that the case should move forward, I retained Marion Whitaker (San Jose) as my attorney. A few days later, a stipulated order was drawn with the advice of my attorney. The stipulation in essence states that This order will not affect or place a barrier in any manner that will stifle my efforts to gain employment as a result of this stipulation. Laura, you drew up an agreement that BSTZ will not disparage me if an employer were to call them (BSTZ) regarding a reference check or character assessment. Well, in most circumstances, it probably didn't get that far because once a restraining order is displayed during a background check, the potential employer probably figured, "why bother" to further extend an employment offer to someone who has violent tendencies. This order has painted a very distorted and inaccurate picture of me, which has caused my family and

I to suffer. I stated in the judges' chamber that I was defending myself after my co-worker began to approach me with both of his fists clenched. More fundamentally, defending yourself against tan attack on your person is protected activity.

Well Laura, due to this order, I've been out of work for over (3) years. I'm married with a (1 ½) year, old (2 ½) year old and an (11) year old Stepson. My wife has been employed throughout this entire period. Her heroic every day efforts have kept our family intact, although we are living from pay-check to pay-check. My family has suffered a great deal over the past three years. Moreover, the order expired on April 30th of this year. Prior to the expiration date, my wife and I were filled with an abundance of optimism. We wholeheartedly believed that with the encroachment of expiration date, that I would be able to get a job and begin to provide for the family. Well, it hasn't changed anything. When potential employees conduct a background search and it displays an expired restraining order, the interest level of potential employee begin to wane. I've gone through this scenario hundreds of times since the order was filed.

Laura, what would you do in my situation? Would you prepare to defend yourself against someone that's approaching you in an offensive and violent manner? Would you be outraged if someone harmed you career and subsequently was unable to provide for your family because of your former employer's "pack of lies"? What would be your reaction if the actions of your former employer were defensive barriers, utilized in a manner to make themselves secure form lawsuits of former employers"?

Laura, I'm asking for your assistance in removing the vestiges of an incident that's over three years old that hasn't served any purpose but,... to strangle and suffocate the hopes and dreams of my family. Laura, I ask for the goodness in your heart, so that the deeds of BSTZ wouldn't be on your conscious. My wife and I have a very small savings, if its possible to come to some agreement relative to this situation, we'll pay monthly installments if you'd agree to assist us.


Sincerely,

Harris Winns